723 So.2d 506 (1998)
STATE of Louisiana, Appellee,
v.
Johnny WINSTON, Defendant-Appellant.
No. 97-1183.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
*507 David Wayne Burton, DeRidder, for State.
Johnny Winston, Pro se.
Before: DOUCET, C.J., YELVERTON and AMY, JJ.
DOUCET, Chief Judge.
This is a pro se appeal of a conviction and sentence for felony theft of cash valued more than $500.
Defendant committed the alleged crime on May 16, 1995. The State filed a bill of information against the Defendant on September 29, 1995, but the Defendant failed to appear at arraignment that day. Subsequently, the Defendant was arraigned on June 28, 1996, and, at that time, elected to proceed pro se.[1] The trial by jury began May 19, 1997, and concluded the following day. The six-person jury deliberated thirty minutes before finding the Defendant guilty of theft of cash over $500.00. The Defendant's motion in arrest of judgment and motion for new trial were denied by the trial judge on May 23 and June 17, 1997, respectively. The trial judge sentenced the Defendant, on June 30, 1997, to sixty months, or five years, at hard labor with credit for time served on the present charge. This sentence is to be served consecutively to any previously imposed sentence.
On appeal, the Defendant has alleged seventeen assignments of error that, for discussion, the State has organized into two issues: the alleged defective bill of information and the sufficiency of the evidence. For convenience and because many assignments overlap, we have organized the seventeen assignments of error into four issues: the alleged defective bill of information; failure to file a bill of particulars; insufficiency of the evidence; and an inappropriate comment by a witness.

FACTS
The Defendant is from Bastrop, Louisiana, in north Louisiana, where he operated an advertising business, Metropolitan Advertising. He traveled throughout Louisiana and, in DeRidder, Louisiana, did business with *508 Mrs. Ethel Sanders who owned Sanders Antiques and More, a business in downtown DeRidder. On May 16, 1995, the Defendant stopped by Mrs. Sanders's business and wrote three checks, totaling $3,000.00, to purchase antique furniture. The three checks were from the account of Metropolitan Advertising with the Mer Rouge State Bank in Mer Rouge, Louisiana. That account had been closed as of June 1, 1993. Thus, the checks were worthless. Defendant has never paid for the value of the three checks.
During his trial, considerable testimony was elicited about the suspicious nature of the transaction. The Defendant wrote three separate checks on the same day to the same business. The first check, # 639, was for $1,000.00 and it was to purchase an antique chest. Mrs. Sanders took this check to the downtown DeRidder branch of the First National Bank and deposited it and another $50.00 check for a total of $1,050.00, less $550.00 in cash. Next, the Defendant wrote a second check, # 645, for $1,500.00 to purchase another antique chest. Mrs. Sanders took this check to the Park Terrace branch of the same bank. She received $1,000.00 in cash on this transaction. Both transactions took place on May 16, 1995. Finally, the Defendant wrote a third check, # 641, for $500.00, to purchase a bedroom set. Mrs. Sanders deposited this check, less $125.00 in cash she received, at the Eastside branch of the bank. The date on that deposit slip is May 17,1995.
When asked why she took the three checks to separate branches of her bank, Mrs. Sanders said she did so at the Defendant's request, stating:
Well, when I went to the main bank, and I cashed that one. And then I was supposed to do another one, but they didn't cash it. So then when I went back to my store, he said, "Well, isn't there other banks here?".... I said, "well, yeah." So he looked in the phone book, and he saw the other banks, and then I went to the other banks.
When asked what she did with the cash she received from the deposits, $1,675.00, Mrs. Sanders said she gave it to the Defendant, at his request, "For some reason, I don't know, he neededreally needed money that day for something. I don't know what." On cross-examination, Mrs. Sanders reluctantly admitted that the Defendant gave her $500.00 of the cash she received in the transactions "for my troubles."
Mr. Paul Shirley is the cashier for First National Bank in DeRidder. He testified that the three checks from Metropolitan Advertising were returned unpaid with the notation that the account had been closed since June 1, 1993. The first two checks were deposited on May 16, 1995, and the third check, on May 17, 1995. Of the $3,000.00 owed to the bank, an offset from Mrs. Sanders' account of $285.09 was applied leaving a balance of $2,714.91 due. On May 26, 1995, Mr. Shirley spoke on the telephone to a man who identified himself as the Defendant. He offered to send $1,000.00 immediately and the rest later, but Mr. Shirley demanded full payment of the $3,000.00; Mr. Shirley never heard from the Defendant after this conversation.
On cross-examination, Mr. Shirley said he suspected Mrs. Sanders was involved in a scheme with the Defendant:
When I discovered that three deposits had been made, two in the same day and one the next day, and all three in different locations, it's just from past experience, I knew something wasn't right about that. It appeared to be a cover-up, or a way to hide it.
All that Mr. Shirley could say was that he had a "hunch" Mrs. Sanders knew the checks were worthless, but he could not prove she actually knew that.
Detective Jimmy Smith, who has since retired, investigated the case for the DeRidder Police Department. He testified that since the worthless checks were written on a closed account, the police charged the Defendant with theft rather than issuing worthless checks. The Defendant asked Detective Smith about his offer to pay the $3,000.00 when he was arrested, but the Detective said that after the Defendant asked for a lawyer, the Detective made no other contacts with the Defendant.
*509 Mr. Bobby J. Jackson, President of Mer Rouge State Bank, testified that the Defendant opened an account for Metropolitan Advertising on April 27, 1993. Total deposits into the account were $3,318.90; the account "zeroed out" after $3,233.12 in checks were written, plus a bank charge of $5.92, and an NSF charge of $120.00. The highest balance for the account was $744.46 on May 6, 1993. Once the account for Metropolitan Advertising was closed by the bank, it was marked not to reopen even if the Defendant made a deposit in it.
The Defendant made a statement on his behalf. He said he asked Mrs. Sanders to do him a favor and cash the three checks. He said he would make a deposit on the account as soon as possible. The Defendant claimed he did not commit a theft because Mrs. Sanders knew what was going on, and that is why she went to three different banks. The Defendant said he had no intent to deprive anyone of anything. He stated that his business had other projects going, and he needed some operating capital. The Defendant then claimed he had $3,000.00 to pay for the checks when he was arrested, but he used the money to post bond. He claimed that after bonding out of jail, he "got into a financial disposition" and could not repay the money.
On cross-examination, the Defendant admitted he knew the account on which the three checks had been written had been closed. The Defendant also admitted he had been convicted of issuing worthless checks in Morehouse Parish in January 1997.
At the conclusion of the trial, the jury took thirty minutes to deliberate and find the Defendant guilty of theft of property valued over $500.00.
The trial judge later sentenced the Defendant to sixty months or five years imprisonment at hard labor with credit for time served on the present offense.[2] This sentence is to be served consecutively to any other sentence previously imposed upon the Defendant.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. Our review reveals no errors patent.

ASSIGNMENTS OF ERROR NUMBERS 1, 3, 4, 5, 6, 9 & 17
By these seven assignments of error, in whole or in part, the Defendant contends that the State filed a defective bill of information against him. In particular, the Defendant claims the bill of information failed to inform him of the nature and cause of the allegations of theft. The pertinent portion of the bill of information charged the Defendant, "Did willfully and unlawfully violate R.S. 14:67, Theft, in that he did commit a theft of cash, having a value of greater than $500.00, (a felony)."
The Defendant first complained about the bill of information in his post-verdict motion in arrest of judgment, filed May 22, 1997, the day after his conviction. The trial judge denied the motion the next day with written reasons. The State argues that the Defendant should have filed a motion to quash before trial, and the Defendant's failure to do so waives the objection. However, a motion in arrest of judgment based upon the ground that the bill is substantially deficient, in that an essential averment is omitted, may be raised for the first time after the verdict in a motion in arrest of judgment. La.Code Crim.P. art. 859, comment (b)(1). Thus, the Defendant's objections are timely.
The State used a short form indictment to charge the Defendant with theft. La.Code Crim.P. art. 465(A)(44). The constitutionality of the short form indictment has been repeatedly upheld. State v. Duplantis, 296 So.2d 818 (La.1974). In State v. McCartney, 96-58 (La.App. 3 Cir. 10/9/96); 684 So.2d 416, writ denied, 97-0508 (La.9/5/97); 700 So.2d 503, cert. denied, ___ U.S. ___, 118 S.Ct. 573, 139 L.Ed.2d 412 (1997), this court addressed the use of short form indictments when a defendant claims he has not been informed of the nature and *510 cause of the accusation against him and stated that, although this form of indictment often lacks sufficient information to supply a defendant with information he believes necessary to apprise him of the nature of the charge being levied, it is incumbent upon the defendant to file a motion for a bill of particulars, the statutory method by which he may procure the details of the offense with which he has been charged.
The record in the present case reveals that the Defendant requested the State "provide information concerning the nature of the above charge" in his first motion for discovery that was filed July 2, 1996. This motion was answered by the district attorney on August 15, 1996, by providing Defendant with all police reports, copies of the checks and deposit slips, arrest warrant, and witness statements. These documents revealed that the Defendant wrote three checks to Sanders Antiques and More on a checking account at Mer Rouge State Bank closed for nearly two years. At a March 21, 1997, hearing to decide his competence to represent himself, additional documents were provided to the Defendant. Further, the Defendant and the District Attorney (D.A.) engaged in the following colloquy:
Q. (by the D.A.).... Do you know what you are charged with?
A. (by Defendant) Theft by fraud.
Q. Okay. Basically theft. Do you know what theft is? The legal definition? Everyone knows what stealing is.
A. I know it comes under [La.R.S.] 14:67.
Q. Have you read 14:67.
A. Yes, sir.
Q. And so you feel like you understand the nature of the charge against you?
A. I feel like I understand the nature of the charge against me, but I do not feel it is the correct charge.
Q. I understand. And I am certainly not going to ask you about the substance of the charge.
A. Yes, sir.
Q. But you understand you are charged with one charge of theft, and you feel like you understand that charge?
A. I understand the charge of theft, yes, sir.
Q. Do you have any question about the nature of the charge against you?.... Do you have a question about what you are charged with?
A. No, sir.
Accordingly, we find the Defendant was fully notified of the offense charged, that he understood the nature of the offense, and that he was not prejudiced by the State's use of the short form indictment.
Defendant further claims that the State should have charged him with issuing worthless checks, a violation of La.R.S. 14:71, rather than theft, a violation of La.R.S. 14:67. The Louisiana legislature has enacted a general theft statute besides a number of other criminal statutes aimed at specific forms of theft. State v. Nguyen, 584 So.2d 256 (La. App. 4 Cir.), writ denied, 589 So.2d 1054 (La.1991). "The fact that a defendant's conduct falls within the purview of two criminal statutes is not unusual, and a statutory scheme which gives the prosecutor the option to choose between two properly defined offenses does not violate any constitutional rights of an accused."[3]State v. Walters, 440 So.2d 115, 122 (La.1983). This is particularly true when a defendant commits theft by issuing worthless checks. See, e.g., State v. Davis, 453 So.2d 642 (La.App. 5 Cir.), writ denied, 457 So.2d 16 (La.1984), overruled on other grounds in State v. Joles, 492 So.2d 490 (La.1986).
Finally, the Defendant argues that La.R.S. 14:71(B) does not set a statutory requirement establishing how many years a checking account must be closed for writing checks on the account to constitute theft. At trial, Detective Smith testified that the police charged the Defendant with theft because the checking account upon which the checks were written had been closed for nearly two *511 years. The question of intent to deprive permanently, an essential element of theft, is a factual matter that will be addressed in the assignments of error challenging the sufficiency of the evidence.
We reject Defendant's arguments that the bill of information was substantially defective and find these arguments without merit.

ASSIGNMENTS OF ERROR NUMBERS 5, 7 & 8
By these three assignments of error, which are related to the previous assignments, the Defendant complains that the State failed to file a bill of particulars setting forth the nature and cause of the accusation against him.
The record contains the first motion for discovery that Defendant alleges contains his request for a bill of particulars. In that motion Defendant simply requested "The State shall also provide information concerning the nature of the charge." Thus, no formal motion for a Bill of Particulars was filed. Nevertheless, Defendant received the equivalent of open file discovery on March 21, 1997, when the State turned over copies of all information it had obtained in this case including the copies of the checks and statements from Mr. Shirley and Mrs. Sanders.
The purpose of a bill of particulars is to provide an accused with sufficient information as to the nature and cause of the offense with which he is charged. State v. Wiggins, 518 So.2d 543 (La.App. 5 Cir.1987); writs denied, 530 So.2d 562 (La.1988) and 569 So.2d 979 (La.1990); State v. Frith, 436 So.2d 623 (La.App. 3 Cir.), writ denied, 440 So.2d 731 (La.1983); La.Code Crim.P. art. 484. It is now clear that the constitutional provision, La. Const. art. 1, § 13, requiring that a defendant be informed of the nature and cause of the accusation is not to be restricted to mean that he must be so informed by indictment; the defendant may also be informed of the facts by bill of particulars. State v. Griffin, 495 So.2d 1306 (La. 1986); see also State v. Gainey, 376 So.2d 1240 (La.1979).
A defendant is entitled to know the alleged method of the commission of an offense when several means of commission of an offense are specified by the statute. State v. Huizar, 414 So.2d 741 (La.1982). However, a motion for a bill of particulars is not a method for a defendant to obtain the state's evidence. La.Code Crim.P. art. 484; State v. Gray, 351 So.2d 448 (La.1977). It is a tool for a defendant to become informed about the nature and cause of the charge against him. La.Code Crim.P. art. 484; State v. Huizar, 332 So.2d 449 (La.1976). The bill of particulars may not be used to discover the details of the evidence, that is, to know "exactly how," the state intends to prove its case. State v. Walker, 344 So.2d 990 (La. 1977). There is no formula regarding the information the State must make available. The extent to which particulars are granted depends on the nature and complexity of the case. State v. Miller, 319 So.2d 339 (La. 1975). Reversible error occurs when there is a failure to provide a defendant information "of the nature and cause of the accusation against [him]." State v. Atkins, 360 So.2d 1341, 1344 (La.1978), cert. denied, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).
As noted previously, the State turned over to the Defendant copies of all police reports, the arrest warrants, the statements of the witnesses, and copies of the three checks and deposit slips. Thus, the Defendant was fully apprised of the nature and cause of the accusation against him.
Thus, these assignments of error are meritless and are rejected.

ASSIGNMENT OF ERRORS NUMBERS 2, 11, 12, 13, 14, 15, 16 & 17
These assignments of error challenge the sufficiency of the evidence presented to convict the Defendant of theft.
Theft is defined as the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. La.R.S. 14:67.
When Mrs. Sanders deposited the three checks the Defendant issued, she received from the bank $1,675.00 in cash. Mrs. Sanders *512 gave the Defendant this money, and he then gave her $500.00 "for her troubles." Thus, the Defendant obtained $1,175.00 in cash by issuing three checks on an account that Mrs. Sanders testified she did not know was closed. The Defendant also used the checks to purchase an antique chest and bedroom set from Sanders Antiques and More. This furniture has neither been returned to Mrs. Sanders nor the purchase price paid.
The Defendant claims that there was no taking or misappropriation without the consent of the victim because Mrs. Sanders knew the Defendant's checks were worthless. Both Mr. Shirley, with the bank, and Detective Smith suspected that Mrs. Sanders knew the checks were worthless based upon the fact that three separate checks were written to the same business on the same day. Additionally, the checks were deposited at three separate branches of the same bank over a two-day period, and over half the deposits were taken as cash. Mrs. Sanders testified she did not know the Defendant's account had been closed. However, it appears that Mrs. Sanders may have known the Defendant did not have the $3,000.00 in his account at the time he wrote the checks but thought he would soon deposit the money in the account to cover the checks. The Defendant's failure to reimburse Mrs. Sanders establishes the Defendant's intent to permanently deprive.
Additionally, the bank was also a victim of the Defendant's crime. The Defendant had Mrs. Sanders deposit the worthless checks and withdraw a large amount of cash. As a result, the bank had $1,675.00 in cash taken from it and the offset from Mrs. Sanders, $285.09, did not fully reimburse the bank for the cash taken.
When viewed in the light most favorable to the prosecution, the evidence clearly supports the verdict, guilty of theft, beyond a reasonable doubt. Therefore, these assignments of error are also without merit.

ASSIGNMENT OF ERROR NO. 10
This assignment of error addresses an inappropriate comment made by Mrs. Sanders, the victim.
As noted previously, Mrs. Sanders was suspected of being a party to the Defendant's criminal activity or at least having knowledge that the checks she deposited were worthless. At trial, the Defendant represented himself and conducted the cross-examination of Mrs. Sanders. During cross-examination, Mrs. Sanders made an unsolicited comment that the police had told her the Defendant was a "con man all up and down Louisiana." The Defendant requested a mistrial based upon prejudice to him in the eyes of the jury. The State argued that the Defendant had solicited the remark by his questions, and the State should not be punished when it had not solicited the remark. The motion for mistrial was denied. The trial judge admonished Mrs. Sanders to keep her remarks responsive to the questions, and the jury was admonished to disregard Mrs. Sanders's remark.
In State v. Ortiz, 96-1609 (La.10/21/97); 701 So.2d 922, cert. denied, ___ U.S. ___, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998), the Louisiana Supreme Court upheld a trial judge's decision not to grant a mistrial but to admonish a witness and the jury when the witness volunteered a nonresponsive and spontaneous remark that he had received death threats from jail. The court noted that La.Code Crim.P. art. 771 provides the court shall promptly admonish the jury to disregard a remark or comment when made by a witness during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury. When the trial court is satisfied an admonition to the jury is sufficient to protect the defendant, that is the preferred remedy. "A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion." State v. Ortiz, 96-1609, p. 10, 701 So.2d at 929.
In the case sub judice, we find the ruling and action of the trial judge was proper, and there was no abuse of discretion. Thus, this assignment of error is without merit.

*513 CONCLUSION
For the reasons stated above, the conviction and sentence of the Defendant are affirmed.
AFFIRMED.
NOTES
[1] A "dangers and disadvantages" hearing, as required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), occurred on March 21, 1997, and the trial judge found the Defendant's waiver of his right to counsel and choice to represent himself to be knowing and voluntary. The trial judge appointed Mr. David Wallace as standby counsel or technical advisor for the Defendant, and Mr. Wallace appeared with the Defendant throughout trial.
[2] The Defendant has charges pending in other parishes in Louisiana, and in Mississippi and Arkansas.
[3] The Defendant cannot claim prosecutorial vindictiveness because the district attorney chose to prosecute him for theft rather than issuing worthless checks because the penalty for both crimes when the "value" exceeds $500.00 is the sameimprisonment for not more than ten years with or without hard labor, or a fine of $3,000.00, or both.