734 So.2d 48 (1999)
Glenn C. BERNARD, et ux., Plaintiffs-Appellants,
v.
CHRYSLER INSURANCE COMPANY, et al., Defendants-Appellees.
No. 98-1846.
Court of Appeal of Louisiana, Third Circuit.
March 24, 1999.
*49 Jerold Edward Knoll, Marksville, for Glenn C. Bernard, et ux.
Stephen Glusman, for Chrysler Ins. Co., et al.
BEFORE: YELVERTON, WOODARD, and GREMILLION, Judges.
WOODARD, Judge.
This insurance coverage litigation arose out of a collision between a vehicle operated by Mr. Glenn C. Bernard and another one operated by Dr. Robert J. Young, III. At the time of the accident, Dr. Young was driving a vehicle leased from Frenzel Motors, Inc., (Frenzel). Frenzel had an outstanding insurance policy pertaining to its garage operations, issued by Chrysler Insurance Company (CIC). Mr. Bernard filed suit against CIC, Dr. Young, and his insurer, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau). Denying coverage, CIC filed a motion for summary judgment, requesting dismissal as a defendant in the litigation. The trial court granted summary judgment on October 14, 1998. Mr. Bernard appeals.

FACTS
On the afternoon of May 23, 1997, Mr. Bernard drove his 1994 Ford pickup truck, eastbound on Louisiana Highway 452, north of Marksville in Avoyelles Parish, Louisiana, in the company of his eighty-year-old mother, Ms. Florence Bernard. When he attempted to negotiate the apex of a sharp turn, he collided with a west-bound 1997 Dodge pickup truck operated by Dr. Young. Ms. Bernard lost her life and Mr. Bernard sustained severe injuries.
Mr. Bernard filed suit against CIC, Dr. Young, and his insurer, Farm Bureau. Denying coverage, CIC filed a motion for summary judgment which the trial court granted on October 14, 1998. Mr. Bernard appeals.

ASSIGNMENTS OF ERROR
Mr. Bernard contends that the trial court committed errors of fact and law in granting CIC summary judgment finding *50 that the CIC general liability policy did not: (1) provide coverage to the vehicle leased by Mr. Young from Frenzel; and (2) provide coverage to Mr. Young as an "insured."

LAW

SUMMARY JUDGMENT
At the outset, we note that appellate courts review summary judgments de novo under the same criteria that governed the trial court's consideration of whether or not summary judgment was appropriate. Schroeder v. Board of Sup'rs, 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979. Pursuant to La.Code Civ.P. art. 966, the summary judgment procedure is favored and shall be applied to secure the just, speedy, and inexpensive determination of every action. Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
Generally, we will not disturb the grant of a summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains. Kumpe v. Louisiana, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882. After which, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment. Id. Thus, summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts. Id.
A fact is "at issue" when there is any reasonable doubt as to its existence. Dinger v. Shea, 96-448 (La.App. 3 Cir. 12/11/96); 685 So.2d 485. It is material if it determines the outcome of the legal dispute. Soileau, 702 So.2d 818. The determination of the materiality of a particular fact must be made in light of the relevant substantive law. Id.
The issue of the coverage accorded by an insurance contract can be resolved appropriately on summary judgment when the evidence supporting the motion does not offer any other reasonable interpretation of the policy. Desselle v. Saint Paul Ins. Co., 95-1706 (La.App. 3 Cir. 9/18/96); 688 So.2d 1080, writ denied, 96-2516 (La.12/6/96); 684 So.2d 938.

INTERPRETATION OF THE CIC POLICY
Before we proceed with the merits of the parties' arguments, we note that the lease agreement between Dr. Young and Frenzel unambiguously reflects Dr. Young's obligation to provide his own insurance to cover "Fire, Theft & Comprehensive," "Collision," "Public Liability," and "Property Damage." The contract provides that Dr. Young shall name Frenzel "as an additional insured and loss payee on all insurance policies." Furthermore, the trial transcript reflects that Dr. Young actually secured such insurance with Farm Bureau. To this effect, the trial court stated, in its reasons for judgment, that "[i]n the case at bar, Robert Young maintained his own liability policy which met the minimum requirements for Louisiana Law."
The law relevant to the case sub judice is well settled. As a general rule, an insurance policy is by nature contractual; hence, it is construed according to the general rules governing the interpretation of contracts. Valentine v. Bonneville Ins. Co., 96-1382 (La.3/17/97); 691 So.2d 665. When interpreting contracts, we must determine the parties' common intent. La. Civ.Code art.2045. Such a determination is not necessary when the words of the contract are clear and explicit and lead to no absurd consequences. La.Civ.Code art. 2046. Words must be given their general, *51 plain, ordinary, and popular meaning, unless they have acquired a technical meaning. La.Civ.Code art.2047; Valentine, 691 So.2d 665; Jones v. Doe, 95-1298 (La.App. 3 Cir. 4/24/96); 673 So.2d 1163.
When we are asked to ascertain the meaning of an insurance policy and its specific sections and subsections, we are required to read it as a whole. Crabtree v. State Farm Ins. Co., 93-509 (La.2/28/94); 632 So.2d 736; Armand v. Rhodes, 96-15 (La.App. 3 Cir. 12/11/96); 685 So.2d 546, writ denied, 97-6 (La.3/21/96); 691 So.2d 81. Hence, we may not read a part of the contract separately at the expense of overlooking another part. Id. Nevertheless, when a pertinent provision of the policy, which is viewed in light of the entire contract, can be reasonably interpreted in two different ways, that provision is treated as being ambiguous. McCarthy v. Berman, 95-1456 (La.2/28/96); 668 So.2d 721; Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988). When an ambiguity exists, it is resolved in favor of coverage and against the insurer. Valentine, 691 So.2d 665, Pareti, 536 So.2d 417. However, the mere fact that an insurance policy is a complex instrument, requiring analysis to understand it, does not make it ambiguous. Louisiana Ins. Guar. v. Interstate Fire, 93-911 (La.1/14/94); 630 So.2d 759. Furthermore, we should not interpret a policy in an unreasonable or strange fashion such as to enlarge or restrict its various provisions beyond what was reasonably contemplated and achieve absurd conclusions. Valentine, 691 So.2d 665. Indeed, "courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language." Pareti, 536 So.2d at 420.

Who Is an Insured?
Mr. Bernard asserts that the trial court erred in finding that Dr. Young's truck was not insured under the CIC policy. Turning to the relevant part of the CIC policy, it defines an insured as follows:
SECTION IILIABILITY COVERAGE
A. COVERAGE
1. WHO IS AN INSURED
a. The following are "insureds" for covered "autos":
. . . .
(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

. . . .
(d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:

(I) Has no other available insurance (whether primary, excess or contingent), they are an insured but only up to the compulsory or financial responsibility law limits where covered "auto" is principally garaged.
(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.
(Emphasis in bold supplied. Emphasis in italics added). Clearly, the definition of an "insured" provided by this master policy excludes coverage to Dr. Young. Indeed, Dr. Young is a customer, he is neither uninsured nor "[h]as other available insurance... less than the compulsory" Louisiana requirements. To this effect the trial court stated:
The policy further specifically provides that minimum limits only are provided to customers where other available insurances are (sic) non-existent, or is less than the amount required by law. In the case at bar, Robert Young maintained *52 his own liability policy which met the minimum requirements for Louisiana Law.

(Emphasis added.)
Notwithstanding, Mr. Bernard alleges that a CIC form bearing number CA 165 (CA 165), which in essence is a declaration of estimated premiums for 1996, contradicts the master policy by describing certain premiums to be due for "any `auto.'" We disagree. Relevant to our understanding of the policy is the fact that the terms "auto" and "insured" are referred to in quotation marks. As such, they clearly refer to the standard definitions of "auto" and "insured" set forth in the master policy. Thus, a reference in such a fashion to "any `auto'" may not add to or change the definition of the specific term, "insured." Read in the context of the policy as a whole, we read "any `auto'" to mean "any `auto'" to which coverage is provided in other parts of the policy.
Mr. Bernard also argues that an endorsement to the CIC policy, namely "LOUISIANA CHANGESCOVERAGE EXTENSION FOR RENTAL VEHICLES," bearing file number CA 01 78 06 90 (endorsement 01 78 06 90), should be interpreted as enlarging the definition of an "insured" as referred to in the master policy. We find no merit to this argument. We read endorsement 01 78 06 90 as merely changing or adding to the master policy's definition of a "Rental vehicle," not an "insured." Endorsement 01 78 06 90 defines a "Rental vehicle" as follows:
"Rental vehicle" means a motor vehicle of the private passenger, pickup or van type, not used for business purposes, other than farming or ranching, if:
a. Not used for transporting persons for hire; and
b. Owned by a person engaged in the business of renting or leasing vehicles that are rented or leased without a driver, to persons other than the owner, and is registered in the name of such owner.
Hence, we do not agree with Mr. Bernard's argument that the definition of a "Rental vehicle" affects that of an "insured" under the master policy.
Mr. Bernard's arguments on this issue did not highlight ambiguities patent in the policy. Merely, they distort what would otherwise be a plain reading of the entire policy. Accordingly, we affirm the trial court's decision.

The Vehicle's Coverage
Mr. Bernard next alleges that the trial court erred in finding that the master policy does not provide coverage to leased vehicles such as Dr. Young's 1997 Dodge pickup. In essence, he asserts that, albeit being excluded from the master policy, coverage is specifically provided by endorsement 01 78 06 90.
The section of the master policy pertinent to this assignment of error provides the following:
SECTION II LIABILITY COVERAGE
. . . .
B. EXCLUSIONS
This insurance does not apply to any of the following:
. . . .
7. LEASED AUTOS

Any covered "auto" while leased or rented to others. But this exclusion does not apply to a covered "auto" you rent to one of your customers while their "auto" is left with you for service or repair.
(Emphasis in bold supplied. Emphasis in italics added). Next, endorsement 01 78 06 90 sets forth in pertinent part:
LOUISIANA CHANGESCOVERAGE EXTENSION FOR RENTAL VEHICLES
. . . .
A. COVERAGE
Any "rental vehicle" that is rented by an "insured" under a written agreement *53 will be considered a covered "auto" only for those coverages where an "X" is entered in the check box in the Schedule of Coverages....
(Emphasis in bold supplied. Emphasis in italics added).
A plain reading of the master policy reflects that leased automobiles, such as Dr. Young's, are specifically denied coverage in an exclusion clause. Absent conflict with statutory provisions or public policy, we enforce reasonable, clear, and unmistakable policy exclusions. Dubois v. Parish Gov't Risk Agency, 95-546 (La.App. 3 Cir. 1/24/96); 670 So.2d 258. Mr. Bernard does not dispute that the master policy excludes leased vehicles from coverage. Instead, he asserts that the term "any `rental vehicle' that is rented by an `insured,'" found in the coverage subsection of endorsement 01 78 06 90, means "any `rental vehicle' that is rented by an `insured'" to customers.
The trial court rejected this argument, stating:
Plaintiff along with defendant, Louisiana Farm Bureau Insurance Company contend that Chrysler Insurance Company is issuing a limited interpretation of the word "by" in that portion of the endorsement that states "any rental vehicle rented BY an insured ..." These parties contend that the words, "rented by" indicates that the endorsement would apply to vehicles that Frenzel Motors rents to other persons as well as from other persons. This interpretation, although ingenious, simply does not fit the policy and facts in the case at bar.
(Emphasis provided.)
We agree with the trial court's assessment. In advocating such an interpretation, Mr. Bernard suggests that we add "to customers" to the endorsement and again distort the plain meaning of the policy. In Andrus v. Police Jury of Lafayette Parish, 270 So.2d 280, 282 (La.App. 3 Cir.1972), we stated that "[r]ather than to search for hidden subtleties and conjectures, our goal in interpreting policy wording is the ascertainment of the apparent object and plain intent of the parties." Similarly, in Authement v. Security Indus. Ins. Co. of Donaldsonville, 401 So.2d 402, 403 (La.App. 1 Cir.1981), the court stated:
While insurance policies will be strictly construed against the party writing them and while exclusions, if ambiguous, will be construed so as to provide coverage, tortured constructions which seize on every word as a possible source of confusion will be dismissed as mere sophistry.
Mr. Bernard's reading of the policy and endorsements does exactly what is described in Authement and Andrus, while the plain language of the policy only applies coverage to vehicles rented by the "insured;" namely, Frenzel.
In its reasons for judgment, the trial court found that endorsement 01 78 06 90 was made consistent with the specificity of Louisiana law; namely, La.R.S. 22:1406(F). To this effect, the court stated:
L.S.A-R.S. 22:1406(F) specifically provides that every insurance company shall extend to it's insured's coverage for temporary substitute vehicles and rental private passenger automobiles. In other words, Louisiana Law specifically provides that every insurance company shall extend coverage to their insured's for any temporary substituted vehicles or rental vehicle being operated by their insured's. This coverage is deemed, by statute, to be primary. Therefore, Chrysler Insurance Company issued coverage to Frenzel Motors for various vehicles. If Frenzel Motors is operating a temporary substitute vehicle or rents a vehicle for their use, then R.S. 22:1406 applies and the endorsement at issue provides coverage for the substitute and/or rental vehicle. Robert Young is not an insured. This is very clear. This is not ambiguous.
(Emphasis supplied).
We need not address this issue to affirm the trial court's decision on summary judgment *54 because the plain meaning of the policy, read together with the endorsement, eliminates any other reasonable interpretations than that which excludes leased vehicles, such as Dr. Young's, from its scope of coverage.

CONCLUSION
For the foregoing reasons, we affirm the trial court's summary judgment. Costs of this appeal are assessed to the appellants.
AFFIRMED.