797 So.2d 84 (2001)
Dianne M. HARDGE
v.
Jean Pierre DUBOSQ, et al.
No. 00-1721.
Court of Appeal of Louisiana, Third Circuit.
April 4, 2001.
Opinions on Rehearing September 19, 2001.
Rehearing Denied October 24, 2001.
*86 James E. Blazek, Adams and Reese, Richard Bouligny Eason, II, Adams and Reese, New Orleans, LA, Counsel for Defendants/Appellants, Aig Europe, Insurance Company of The State of Pennsylvania.
Howard Daigle, Jr., John Michael Dubreuil, James Louis Bradford, III, Seale, Daigle & Ross, Covington, LA, Counsel for Defendant/Appellee, Jean Pierre Dubosq.
David W. Groner, Attorney at Law, New Iberia, LA, Counsel for Plaintiff/Appellee, Dianne M. Hardge.
Richard Joseph Pitre, Jr., Onebane, Bernard, Torian, Lafayette, LA, Counsel for Defendant/Appellee, Allstate Insurance Company.
Court composed of DOUCET, C.J., THIBODEAUX, and WOODARD, Judges.
WOODARD, Judge.
Ms. Dianne M. Hardge sued Mr. Jean Pierre Dubosq, a resident of France, for damages he caused in an August 17, 1996 automobile accident while he was driving an Avis Rent A Car (Avis). She also sued AIG Europe, Mr. Dubosq's travel insurance company; Pathfinder Insurance Company (Pathfinder), Avis' limited coverage insurer; and Allstate Insurance Company (Allstate), her UM insurer. All parties moved for summary judgment on the question of whether the AIG Europe policy provided coverage to Mr. Dubosq for Ms. Hardge's damages. The trial court found such coverage and granted the judgment.
AIG Europe appeals, contending that the automobile policy exclusion provisions preclude coverage. We agree and reverse. As our decision creates a dispute of material fact as to which version of the AIG Europe policy is applicable, we remand the matter for a trial on the merits.

* * * * *
Residents of Linxe, France, Mr. Dubosq and his wife visited Louisiana as tourists. While driving a rental car in New Iberia, Louisiana, he caused the accident with Ms. Hardge, a Florida resident.
Prior to coming to Louisiana, he purchased a three-week travel insurance policy, named AV Assist, from his French travel agent, Mr. Francois Guchan. AIG Europe provided the policy. He paid 1160.00 French Francs or about $200.00 for the policy.
Ms. Hardge filed suit against Mr. Dubosq, Pathfinder, AIG Europe, and Allstate, her UM insurer. All parties filed motions for partial summary judgment concerning whether the AIG Europe policy provided Mr. Dubosq with liability coverage. The trial court heard these motions on August 18, 2000. It denied AIG Europe's motion that the automobile exclusion precluded coverage but granted the other motions, finding that the automobile exclusion did not apply and that the AIG Europe policy did provide coverage to Mr. Dubosq for Mr. Hardge's accident. AIG Europe appeals.
The issue before the court is whether the AIG Europe policy excludes coverage for damages which Ms. Hardge suffered. AIG Europe contends that it unambiguously does exclude coverage for damages resulting from the insured's use of an automobile.

* * * * *
Appellate courts review summary judgments de novo under the same criteria that governed the trial court's consideration of whether or not summary judgment was appropriate.[1] Summary judgment is *87 proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[2]
La.Code Civ.P. art. 966, charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains to be decided.[3] Once the mover makes a prima facie showing to this effect and that summary judgment should be granted, the burden shifts to the nonmover.[4] Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
In summary, the threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains.[5] After which, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[6] Thus, summary judgment is apropos when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts.[7]
Facts are material if they determine the outcome of the legal dispute.[8] The determination of the materiality of a particular fact must be made in light of the relevant substantive law.[9]
In reviewing the appropriateness of the trial court's decision, we are initially concerned with the law regarding insurance contract interpretation. Bernard v. Chrysler Ins. Co.[10] states:
The law relevant to the case sub judice is well settled. As a general rule, an insurance policy is by nature contractual; hence, it is construed according to the general rules governing the interpretation of contracts. Valentine v. Bonneville Ins. Co., 96-1382 (La.3/17/97); 691 So.2d 665. When interpreting contracts, we must determine the parties' common intent. La.Civ. Code art. 2045. Such a determination is not necessary when the words of the contract are clear and explicit and lead to no absurd consequences. La.Civ. Code art. 2046. Words must be given their general, plain, ordinary, and popular *88 meaning, unless they have acquired a technical meaning. La.Civ.Code art. 2047; Valentine, 691 So.2d 665; Jones v. Doe, 95-1298 (La.App. 3 Cir. 4/24/96); 673 So.2d 1163.
When we are asked to ascertain the meaning of an insurance policy and its specific sections and subsections, we are required to read it as a whole. Crabtree v. State Farm Ins. Co., 93-509 (La.2/28/94); 632 So.2d 736; Armand v. Rhodes, 96-15 (La.App. 3 Cir. 12/11/96); 685 So.2d 546, writ denied, 97-6 (La.3/21/9[7]); 691 So.2d 81. Hence, we may not read a part of the contract separately at the expense of overlooking another part. Id. Nevertheless, when a pertinent provision of the policy, which is viewed in light of the entire contract, can be reasonably interpreted in two different ways, that provision is treated as being ambiguous. McCarthy v. Berman, 95-1456 (La.2/28/96); 668 So.2d 721; Pareti v. Sentry Indem. Co., 536 So.2d 417 (La. 1988). When an ambiguity exists, it is resolved in favor of coverage and against the insurer. Valentine, 691 So.2d 665, Pareti, 536 So.2d 417. However, the mere fact that an insurance policy is a complex instrument, requiring analysis to understand it, does not make it ambiguous. Louisiana Ins. Guar. v. Interstate Fire, 93-911 (La.1/14/94); 630 So.2d 759. Furthermore, we should not interpret a policy in an unreasonable or strange fashion such as to enlarge or restrict its various provisions beyond what was reasonably contemplated and achieve absurd conclusions. Valentine, 691 So.2d 665. Indeed, "courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language." Pareti, 536 So.2d at 420.
The policy, upon which AIG Europe relies, provided first-party coverage for certain damages which Mr. Dubosq might sustain for incidents such as lost luggage, airplane delay, medical fees during the trip, etc. It also provided third-party coverage in Chapter 11, titled, "The Civil Liability Coverage Abroad," which contained certain exclusions and in Chapter 12, "Coverage for Physical Damages to Rented Vehicles." The relevant provisions of this policy are below, in French:
CHAPITRE 11-LA GARANTIE RESPONSABILITÉ CIVILE À L'ÉTRANGER
Cette garantie vous couvre contre les conséquences de la Responsabilité Civile que vous pouvez encourir en raison des Dommages Corporels ou Matériels causés à des Tiers au cours du voyage.
Even though everyone probably understood the above, the English translation follows:
CHAPTER 11-CIVIL LIABILITY ABROAD
This coverage is provided in the event of liability for accidental bodily injury or material damages caused to third parties during the course of your trip.
The Chapter 11 exclusion, in French, states:
Les Accidents survenus lors de l'utilisation d'automobiles ou engins à moteur, d'embarcations à voile ou à moteur, d'aéronefs, d'animaux de selle dont l'Assuré ou les personnes dont il est civilement responsable ont la propriété, la conduite ou la garde.
In English:
Accidents arising from the use of automobiles or engine propelled machines, motor boats or sailing boats, aircraft and saddled animals the insured or the people *89 he is responsible for, may own, drive, or have garde of.
Chapter 2, in French, states:
CHAPITRE 2-DÉFINITIONS CONTRACTUELLES
ACCIDENT
Toute atteinte corporelle non intentionnelle de votre part provenant de l'action soudaine d'une cause extérieure dont vous êtes victime après la date d'effet du contrat.
Which, in English, states:
CHAPTER 2-CONTRACT DEFINITIONS
ACCIDENT
Any unintentional bodily injury resulting from the sudden action of an exterior cause you may sustain after the effective date of coverage.
We have read this entire policy in French and carefully examined the translation. Allstate and Ms. Hardge suggest that because the term "accident" is defined to include only incidents of which "you-the insured" are a victim, then, the exclusion in Chapter 11 is inapplicable to damages for Ms. Hardge because she, not the insured, is the victim. We reject this strained policy interpretation.
While Chapter 11 of AIG Europe's policy provides coverage for damages caused because of accidental bodily injury to a third-party, it expressly and unequivocally excludes accidents due to the use of automobiles, engine powered machines, aircraft, and saddled animals. Thus, it unambiguously precludes coverage for the damages which Ms. Hardge alleged. This is the only reasonable interpretation of the entire policy's language.
This case is somewhat similar to Jenkins v. CNA Ins. Co.[11] In that case, the plaintiff, a passenger, filed suit against her insurer for damages, which she allegedly suffered because of her husband's negligent boat operation. The insurer filed a motion for summary judgment on the ground that it did not owe coverage because of an exclusion in the policy for claims which a family member made for bodily injury which another family member caused. The plaintiff urged that the policy was ambiguous because the policy defined "covered persons" to include family members, yet the exclusions precluded coverage for family members when a family member caused the injury. The court held that neither the language, definition of "covered persons," nor the language of the exclusion was ambiguous and that a clear unambiguous provision of the policy, restricting coverage, had to be given effect.
The same is true in the instant case. The definition of "Accident" cannot prevent the application of a clearly worded exclusion; namely, the third-party automobile exclusion.
Accordingly, we reverse that part of the trial court's decision which holds that the AIG Europe's version of the policy provides coverage. Our determination creates a dispute of material fact, which requires us to remand this case for a trial, for the reasons below.
Mr. Dubosq testified that the travel agent gave him only one document, allegedly comprising the "policy." That document states, in part:
We hereby confirm that the cardholder is insured by AIG EUROPE member company of:
AMERICAN INTERNATIONAL GROUP
This insurance includes:

*90 CDW/LDW up to U.S. $25,000 (includes Loss of Use)
PAT-PED
Medical Expenses: maximum 1,000,000 FF per insured
Travel Assistance/ Medical Evacuation Repatriation
Legal Assistance following moving violations/ motor accidents
Personal Liability
Accidental Death & Dismemberment Benefits
Coverage valid for all countries in North, South and Central America with exception of all French possessions and territories.
This "policy" provides coverage for "personal liability" of the type for which Mr. Dubosq is being sued in this case. However, it is not the "policy" upon which AIG relies. As this is a summary judgment, there is a dispute of material fact concerning which version of the AIG Europe policy is applicable. Therefore, we remand this matter to the trial court for trial.

CONCLUSION
The trial court erred in granting summary judgment in favor of insurance coverage under the AIG Europe policy for Ms. Hardge's injuries, which she sustained in this accident, as there is a dispute of material fact regarding which version of the AIG Europe policy is applicable.
Accordingly, we remand this matter for trial and cast all parties, equally, for the costs of this appeal.
REVERSED AND REMANDED.
DOUCET, C.J., concurs.
WOODARD, J., concurs and assigns written reasons.
DOUCET, C.J., concurring.
[Editor's Note: Concurring opinion of Doucet, C.J. was withdrawn prior to publication.]
WOODARD, J., concurring.
Footnoting court opinionsan odd topic to trigger a concurring opinion, particularly since it was not an issue which the parties or the opinion addressed. Notwithstanding, since Chief Judge Doucet has found it fit to place, what amounts to, his stylistic preference for legal opinion writing at issue in this public forum, fairness dictates that his comments be addressed in a similar fashion.
Specifically, rather than focusing on the merits of the opinion, Chief Judge Doucet's sole reason for concurring lies in his objection to the use of citational footnotes in the instant opinion. Surprisingly, albeit having used citational footnotes in his own legal opinions,[1] Chief Judge Doucet advances that this circuit's rules, as well as THE BLUEBOOK'S, prohibit their use and that citations must appear, solely, in the body of the opinion.
Contrary to Chief Judge Doucet's assurances, there is no legal proscription against using citational footnotes. As his authority, he refers to "this court's officially adopted citation rules," known as "Citation Manual," and THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION, RULE 1.1 and PRACTITIONER'S NOTE 2 (16th Ed. 1996). *91 This court's current citation manual simply refers judges to THE BLUEBOOK concerning this issue. BLUEBOOK RULE 1.1 does not address location of citations in legal opinions. Nevertheless, when taken out of context, one might conclude that PRACTITIONER'S NOTE 2, impliedly, supports Chief Judge Doucet's proposition. However, to discern their true meaning, THE BLUEBOOK provisions, in question, should be interpreted in the proper context; namely, THE BLUEBOOK'S INTRODUCTORY NOTE, 1.3, which provides that "[i]n court documents and legal memoranda, citations generally appear within the text of the document, as full sentences or as clauses within sentences, directly after the propositions that they support." (Emphasis added.) Thus, it is evident that THE BLUEBOOK does not dictate the location of citations[2] but simply relates a common practice. And, it does not prohibit placing a citation in a footnote, which is appended to, and immediately follows, its proposition. Furthermore, PRACTITIONER'S NOTE 2 is not intended to be a mandatory rule but a mere example.
"The basic purpose of a legal citation is to allow the reader to locate a cited source accurately and efficiently."[3] Whether the citation is in the body of the opinion or in a footnote, on the same page, is of no moment because both accomplish the same purpose. The major difference is that placing it in a footnote provides an added advantage to the readeran uncluttered, easy-to-read opinion.
Moreover, both, the United States and the Louisiana Constitutions and statutes are silent concerning the specific content and form of judicial opinions. And finally, our UNIFORM RULES COURTS OF APPEAL RULE 2-16(A), pertaining to an opinion, only provide that "[t]he decisions of a Court of Appeal may be expressed in ... a full opinion which gives the judgment of the court and a full statement of the reasons supporting the judgment[.]"
Furthermore, while legal scholars and opinion writers on this topic do oppose the use of substantive footnotes in judicial opinions; generally, they commend the use of citational footnotes. They sharply distinguish between the two: Citational footnotes are those which state the legal authority for a proposition by merely providing authority references to other legal sources; a footnote that serves any purpose, other than a simple citation to authority, is a substantive footnote.[4]
Some of the highly respected jurists in Louisiana, who have used citational footnotes in their opinions, include United States Fifth Circuit Court of Appeal Judges Alvin Rubin and John Minor Wisdom, who began the practice in 1983, and recently retired Judge Melvin Shortess of the Louisiana First Circuit Court of Appeal.
Advanced legal writing scholars, such as Bryan A. Garner, recommend citational footnotes as the preferred legal opinion writing style.[5] And, Garner notes that such a practice is the nationwide trend in, both, federal and state courts.[6] For example, four of the five judges on the Delaware *92 Supreme Court[7] and two justices of the Texas Supreme Court use citational footnotes, as do all judges in Alaska[8] and all appellate judges in California.[9]
On the contrary, there is much rancor in the legal community concerning the use of substantive footnotes in legal opinions. For example, one law professor wrote that "[a]ccording to the `devil theory of footnoting,' any note other than a `pure' citation is excrement in the corridors of academe."[10] (Emphasis added.) Similarly, Noel Coward is quoted in The Art of Footnote as having stated: "Encountering [a footnote] is like going downstairs to answer the doorbell while making love."[11] And Judge Mikva, one of their fiercest opponents, described footnotes as "phony excrescences"[12] and "an abomination."[13] He explained that "[i]n the pure application, a footnote that merely cites a case or other writing is the easiest to defendand the least troublesome[.]"[14] "If I thought I was fully cured and that my crusade [to eliminate substantive footnotes] was catching on, I would use footnotes just for authority citations. If footnotes were confined to that use solely, readers could make up their own minds whether they were reading for profit or pleasure. A reader who just wanted to know what a judge was saying about the case being decided could ignore the footnotes altogether. The reader who wanted to wade in more deeplycheck the authority, or distinguish it for future casescould turn to the footnotes. As it is, because I am still full of footnote toxin, I put my authority citations right in the text. The result is hardly conducive to a flowing style of writing."[15] (Emphasis added.)
To say the least, this debate has generated some passion. However, none of these contemptuous denunciations were aimed at citational footnotes, which Chief Judge Doucet criticizes and uses, but rather at substantive footnotes, which Chief Judge Doucet, also, uses in his opinions.[16]
Originally, judges did place citations in the body of the text, as opposed to in footnotes, not for any profound legal reason, but because of the mechanical limitations of typewriters,[17] which were the tools available at that time. However, with subsequent technology, that limitation and, therefore, the real reason for putting citations in the text no longer existed. From that point on, presumably, judges were left with the option of placing citations in footnotes or in the body of their opinions. Indeed, Judge Mikva pointed out that using citational footnotes is a matter of individual, *93 opinion, writing style.[18]
In his concurrence, Chief Judge Doucet presented no authority to the contrary. His concurring opinion is disconcerting because it transcends the mere issue of the "correctness" of using citational footnotes in our opinions. He seems to suggest that all judges must adopt the same writing styleunder the auspices of uniformity. Although I understand the importance for using a uniform citation form as a way to facilitate legal research for our profession, commanding uniform writing styles serves no endorsed, beneficial purpose. Instead, it thwarts a coveted safeguard in our judicial systemjudicial independence. And, using a particular style in judicial opinions, including citational footnotes, is strictly within the realm of each judge's independence.[19]
United States District Judge Leonie M. Brinkema summed it up when she said that, "efforts to homogenize the federal courts of this nation are shortsighted. Diversity among our federal courts encourages experimentation and progress and is one of the reasons the federal judiciary has remained so dynamic ... no federal judge is required to follow any particular form for his or her opinions. Some judges value brevity; some use literary flourishes; some include many footnotes, others use few; some follow Blue Book format, others do not; some only cite to the official source, and others include parallel cites. To mandate that judicial opinions conform to a specific format ... seriously invades judicial independence."[20] (Emphasis added).
I fully support Judge Brinkema's appreciation of judicial independence and its relevance to opinion writing. Her understanding is consistent with CANNON 1 of the CODE OF JUDICIAL CONDUCT, which mandates that judges have a duty to protect, not subvert, their peers "in the exercise of judicial independence."
In exercising that independence, my objective for using citational footnotes, as opposed to placing a string of citations in the middle of a sentence, is to write my opinions in an uncluttered, flowing, writing style in order to make them accessible and understandable, not only, to lawyers and judges, but also, to litigants and to the people whom I was elected to serve, without depriving the legal community of necessary references.
I disagree with Chief Judge Doucet's assertion that it is a requirement that legal citations be placed in the body of the opinion. Furthermore, given the current, nationwide trend, legal experts' recommendations, and the fact that using citational footnotes yields stronger, clearer opinions, I suggest that the other judges, in this state, and their readers would benefit by adopting this style.
Reversed and Remanded.

ON REHEARING
As stated in the original opinion herein, the trial court granted summary judgment in this matter finding that the policy of insurance alleged by AIG Europe to have been issued to Mr. Dubosq provided coverage for the accident made the basis of this suit. Originally, this panel reversed finding that the policy did not provide coverage and remanded to determine whether *94 that policy or another document provided to Mr. Dubosq formed the policy of insurance applicable to this case. On rehearing, we find that it is both premature and unnecessary to determine whether the policy relied on by AIG Europe provides coverage since a question of material fact remains with regard to which, if either, of the two possible policies applies to this accident. Accordingly, the rehearing is granted. The trial court's ruling on the summary judgment is reversed and this matter is remanded for further proceedings.
REVERSED AND REMANDED.

ON REHEARING
WOODARD, J., dissenting.
While I agree with the majority's decision to reverse the trial court's summary judgment and remand for further proceedings, I respectfully dissent from its finding that our original policy interpretation was "premature and unnecessary." In order to arrive at the conclusion that a remand is appropriate, it is crucial and necessary to interpret the language of the two policies adduced in the record.
Specifically, the majority determined that summary judgment is inappropriate, merely, because two potentially applicable policies exist. This is the fact upon which it relies to say that there is a dispute of material fact, rendering summary judgment inappropriate. This fact is meaningless unless it has some conflicting effect on the judgment's outcome. Such a conflict would be a material fact, warranting denial of summary judgment. The problem is that there is no way to determine if this is so without interpreting the coverage provisions, which is what we did in the original opinion.
NOTES
[1] Schroeder v. Board of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979.
[2] La.Code Civ.P. art. 966(B).
[3] Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
[4] Id.
[5] Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.
[6] Id.
[7] Id.
[8] Soileau, 702 So.2d 818.
[9] Id.
[10] 98-1846, p. 3 (La.App. 3 Cir 3/24/99); 734 So.2d 48, 50.
[11] 98-22 (La.App. 1 Cir. 12/28/98), 726 So.2d 71.
[1] See State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96); 672 So.2d 197; Haynes v. Calcasieu Medical Transp., Inc., 97-300 (La.App. 3 Cir. 10/29/97); 702 So.2d 1024; Guinn v. Rapides Parish Police Jury, 97-1519 (La.App. 3 Cir. 4/1/98); 708 So.2d 835; Picard v. Picard, 97-1258 (La.App. 3 Cir. 4/1/98); 708 So.2d 1292; Thomas v. Evangeline Parish Sch. Bd., 98-1458 (La.App. 3 Cir. 3/24/99); 733 So.2d 102; Lamson Petroleum Co. v. Hallwood Petroleum, Inc., 99-1937 (La.App. 3 Cir. 5/10/00); 763 So.2d 40.
[2] Telephone interview between Van M. Davidson and Bryan A. Garner, President, Law Prose, Inc., Dallas, Texas. (March 27, 2001).
[3] THE HARVARD LAW REVIEW ASSOCIATION, THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION 4 (1996).
[4] Abner J. Mikva, Goodbye to Footnotes, 56 U.COLO.L.REV. 647 (1985).
[5] Bryan A. Garner, The Citational Footnote, 7 THE SCRIBES JOURNAL OF LEGAL WRITING 97 (2000).
[6] Id. at 105-6.
[7] Id. at 104.
[8] Id.
[9] Interview, supra, Note 2.
[10] Axel-Lute, Legal Citation Form: Theory and Practice, 75 L.LIBR.J. 148 (1982).
[11] Bowersock, The Art of Footnote, 53 AM.SCHOLAR 54, 55 (1984).
[12] Mikva, supra, Note 4.
[13] Id.
[14] Id.
[15] Id.
[16] See State v. Davis, 97-331 (La.App. 3 Cir. 10/29/97); 702 So.2d 1014; State v. Winston, 97-1183 (La.App. 3 Cir. 12/9/98, 723 So.2d 506); State v. Montgomery, 98-775 (La.App. 3 Cir. 1/27/99); 734 So.2d 650; Willis v. Duck, 98-1898 (La.App. 3 Cir. 5/5/99); 733 So.2d 707; Lavergne v. Thomas, 99-1186 (La.App. 3 Cir. 12/8/99); 758 So.2d 197; Lamson Petroleum Co. v. Hallwood Petroleum, Inc., 99-1444 (La.App. 3 Cir. 5/24/00); 770 So.2d 786.
[17] Garner, supra, Note 5 at 98.
[18] Interview, supra, Note 2; Mikva, supra, Note 4.
[19] Interview, supra, Note 2.
[20] Letter from Judge Leonie M. Brinkema, United States District Judge for the Eastern District of Virginia to Administrative Office of the U.S. Courts, Appellate Court and Circuit Administrative Division (March 5, 1997) (on file with the Office of the U.S. Courts).