DANIEL L. DYSART, Judge.
|,In this suit for personal injuries, the trial court granted summary judgment in favor of Maryland Casualty Insurance Company (“Maryland”), finding that its policy does not provide coverage for the claims asserted by plaintiff. The trial court initially denied Maryland’s Motion for Summary Judgment. After Maryland filed a Motion for New Trial, the trial court reversed itself and granted both the Motion for New Trial and the Motion for Summary Judgment, dismissing Maryland from this action with prejudice.
For the reasons that follow, we vacate the judgment of the trial court and remand.
FACTUAL AND PROCEDURAL BACKGROUND
This lawsuit has a rather complicated procedural history. Because we are vacating the trial court’s judgment on procedural grounds, we detail the procedural history of the case as follows:
On June 30, 2006, plaintiff filed an original petition, seeking damages for personal injuries allegedly sustained by plaintiff, Deborah Daniels, on July 3, 2005, |2when Ms. Daniels was attending the Essence Festival at the Louisiana Superdome. Plaintiff alleges that she slipped on an “unknown substance,” which caused her to fall to the ground and become injured. In her original petition, plaintiff named SMG Crystal, L.L.C. (“SMG”), the Louisiana Stadium & Exposition District (“LSED”), the manager and owner of the Superdome, and two fictitious insurers as defendants.[1]
On August 3, 2009, LSED, SMG and the State of Louisiana filed a Third Party Demand against Essence Festivals, LLC (“Essence Festivals”), Festival Productions Louisiana, LLC (“FPLA”),[2] and Festival Productions, Inc. — New Orleans (“FPINO”), seeking defense and indemnity. According to the Third Party Demand, plaintiffs fall during the 2005 Essence Festival occurred in an area leased and occupied by the third party defendants. It further alleged that a lease agreement between SMG (on its behalf and on behalf of the State of Louisiana) and Essence Festivals required Essence Festivals to indemnify it and hold it harmless. The Third Party Demand also alleged that the third party plaintiffs are listed as additional insureds under a policy issued by Travelers Insurance Company, which provided coverage to Essence Festivals for the time period of plaintiffs fall.
On March 10, 2010, Essence Festivals then filed a Cross-Claim against FPINO and its insurer, Maryland Casualty Company (“Maryland”), in which it alleged that, pursuant to a contract between it and FPINO, the latter assumed ^responsibility “for all aspects of the production of the events program” on its behalf, including “concessions operations” and “arranging for adequate security.”[3] Essence Festi *1274 vals further alleged that FPINO contractually agreed to indemnify, defend and hold it harmless for “any and all claims, liabilities ... damages, cost or expense ... arising out of: (1) any accident, incident or occurrence in any way connected to the event, which is or was proximately or exclusively caused by [it] or its agents.” Finally, Essence Festivals alleged that FPINO was contractually obligated to obtain and provide insurance which named Essence Festivals as an additional insured.
In a second amending petition filed on November 4, 2010, plaintiff amended her factual allegations to include the claim that, “upon information and belief,” the substance on which she slipped either “leaked from the ceiling” or “was spilled on the floor” and not cleaned up. Plaintiff also amended to name Essence, FPLA, FPINO, and Maryland as direct defendants, along with several fictitious insurers.
On June 2, 2011, Maryland filed a Motion for Summary Judgment in which it made several arguments. First, it argued that its policy, issued to FPINO, did not cover the Superdome as a designated premises. Second, it argued that its policy excluded coverage for Essence’s claims for defense and indemnity because the contract between Essence and FPINO is not an “insured contract” under the terms |4of the policy. Lastly, it argued that it owed no defense and indemnity to Essence because Essence could not be held liable for FPINO’s negligence.[4]
Essence then filed its own Motion for Summary Judgment on September 21, 2011, on the basis that it owed no duty to plaintiff because SMG, who leased the Su-perdome, undertook all responsibility for the premises, including concessions, security and janitorial services. It further argued that Essence had no duty to SMG for defense and indemnity.
On November 4, 2011, FPINO filed a Cross-Claim against Maryland and Essence Festivals. It alleged that, as an insured under Maryland’s policy, it was owed defense and indemnity, which Maryland had refused to provide. It further alleged that Maryland’s actions amounted to bad faith for which it was liable for penalties and attorney’s fees. As to Essence Festivals, FPINO alleged that Essence contractually agreed to indemnify it for Essence’s negligence and also to provide insurance coverage to FPINO pursuant to their agreement.
FPINO filed a Motion for Summary Judgment against plaintiff on March 16, 2012, which argued that the area in which plaintiff fell was not within the custody or control of FPINO, and that there was an absence of any evidence establishing that FPINO had any knowledge or should have had any knowledge of the substance on which plaintiff fell.
|sOn April 3, 2012, FPINO filed a second Motion for Summary Judgment, directed against Maryland, in which it argued that Maryland’s policy provided coverage to FPINO for the allegations in plaintiffs suit *1275 and therefore, owed FPINO defense and indemnity.
Another Motion for Summary Judgment was filed on September 12, 2012, by the State of Louisiana (on behalf of LSED) and SMG against Essence in which they maintained that, by virtue of their lease contract with Essence, they were covered as additional insureds under Essence’s policy for claims arising out of Essence’s operations. As such, they claimed Essence owed defense and indemnity. In response, Essence filed a Cross-Motion for Summary Judgment.
On September 28, 2012, the court heard argument on all of the motions for summary judgment. At that hearing, the trial court made the following verbal rulings.
First, the trial court denied Maryland’s motion and granted FPINO’s motion, finding that Maryland’s policy provided coverage to both FPINO and to Essence. The court concluded that Maryland’s “commercial liability policy ... ambiguously fails to exclude coverage in this case.”
Second, the trial court denied the State’s (LSED’s) and SMG’s motion, and granted Essence’s Cross Motion for Summary Judgment, finding that that the lease agreement between Essence and SMG explicitly provided that SMG, rather than Essence, would be responsible for the event and that SMG “reserve[d] the right ... |Rto control the management and/or operation of the Superdome.” It further found that Essence owed no duty to plaintiff.
Before the trial court issued written judgments on the September 28, 2012 hearings, Maryland filed a “Motion to Clarify Ruling Re: Motion to Amend & Supplement Maryland Casualty Company’s Motion for Summary Judgment filed on 9/10/12” on October 1, 2012. In that motion, Maryland contended that the trial court’s verbal ruling on Maryland’s motion conflicted with its ruling on Essence’s motion. In that regard, Maryland argued that the evidence in support of its motion supported the conclusion that the trial court reached — that SMG (not FPINO or Essence) “had the duty to inspect, maintain, and clean the floor area” where plaintiff fell. Accordingly, Maryland argued, the same evidence warranted a dismissal of all claims against Maryland.
The trial court rendered two judgments on November 2, 2012, in connection with the September 28, 2012 hearing and confirmed its verbal rulings. One judgment denied LSED’s and SMG’s Motion for Summary Judgment, but granted Essence’s Cross Motion for Summary Judgment, dismissing those claims raised by LSED and SMG in their third party demand.[5] The second judgment denied Maryland’s Motion for Summary Judgment and granted FPINO’s Motion for Summary Judgment.
|7On November 13, 2012, Maryland filed a Motion for New Trial in which it noted that the trial court was converting its October 1, 2012 motion to clarify into a motion for new trial. This Motion was heard on February 22, 2013. By judgment dated March 5, 2013, the trial court granted Maryland’s Motion for New Trial and reversed its prior ruling, thereby granting its Motion for Summary Judgment, dismissing all claims against it. In its written Reasons for Judgment, the trial court found that: (1) Maryland’s policy provided coverage to FPINO only for two locations *1276 (336 Camp Street and 938 Moss Street) by virtue of a designated premises endorsement; (2) because of the designated premises endorsement, there is no coverage for the Superdome; and (3) Essence Festivals is not an additional insured under the policy, as the policy’s contractual liability exclusion precludes coverage for contracts that assume liability for other parties. The trial court then vacated the November 2, 2012 judgment.
From this March 5, 2013 judgment, FPINO filed a Motion for Devolutive Appeal on March 26, 2013. Plaintiff also filed a Notice of Devolutive Appeal as to this judgment on April 22, 2013.
In the meantime, on February 22, 2013, the trial court issued its written judgment granting Essence’s Motion for Summary Judgment (as to liability) which was also heard on September 28, 2012.[6] Essence filed a Notice of Devolutive Appeal of the trial court’s February 22, 2013 judgment (erroneously noting that the judgment granted Maryland’s motion for summary judgment) on February 22, |s2013.[7] Plaintiff filed a Notice of Devolutive Appeal on April 12, 2013 of the February 22, 2013 judgment as well; however, this appeal purportedly was of the trial court’s “judgment ... granting Maryland Casualty Insurance Company’s Motion for Summary Judgment.”[8] Plaintiff filed another notice of devolutive appeal of the February 22, 2013 dismissal of Essence on April 22, 2013.[9] Plaintiff also filed a notice of devol-utive appeal of the March 5, 2013 judgment on April 22, 2013.
On June 5, 2013, Maryland filed a motion to dismiss the appeals taken by plaintiff and Essence of the March 5, 2013 judgment.[10] Maryland’s motion was based on plaintiffs failure to file an order with her April 22, 2013 notice of appeal as required by La. C.C. Pr. art. 2121. Rather, as Maryland contends, plaintiffs order of appeal was filed on May 14, 2013. By Order dated June 27, 2013, this Court dismissed Maryland’s Motion to Dismiss Appeals, reserving Maryland’s right to re-urge the motion before this panel.
On August 6, 2013, plaintiff filed an “Answer” to FPINO’s appeal of the March 5, 2013 judgment. Maryland then filed an Original Brief in opposition to plaintiffs Answer in which Maryland raised the issue of the timeliness of plaintiffs “Answer.”
^DISCUSSION
In this appeal, the parties address the propriety of the trial court’s judgment granting Maryland’s Motion for Summary judgment — that is, whether Maryland’s policy provides coverage for the claims in this suit and whether Maryland has a duty to defend FPINO. We do not reach these issues, as we find procedural defects in this appeal.
*1277 The trial court’s November 2, 2012 judgment, denying Maryland’s Motion for Summary judgment was an interlocutory order and our law recognizes no procedure for obtaining a new trial on a denial of a motion for summary judgment. As this Court noted in Carter v. Rhea, 01-0234, p. 5 (La.App. 4 Cir. 4/25/01), 785 So.2d 1022, 1025, citing Winston v. Martin, 34,424, p. 2, (La.App.2d Cir. 9/21/2000), 801 So.2d 389, “a motion for new trial is a procedural device applying only to final judgments.” At issue in Carter was whether a writ application filed more than four months after the ruling on a summary judgment was timely, when filed within thirty days of the denial of a motion for new trial on that ruling. The Carter court held:
In the instant case, the judgment at issue is a non-final partial summary judgment, not appealable under the provisions of La. C.C.P. art.1915. Thus, the filing of a motion for new trial seeking reconsideration of an interlocutory judgment cannot interrupt the 30-day period for filing an application for supervisory writs established by Rule 4-3 of the Uniform Rules-Courts of Appeal. However, the provisions of the Louisiana Code of Civil Procedure are clear that motions for new trial may be taken only from a final judgment.
Id.[11]
More recently, this Court addressed the virtually identical issue as that presented in this case. In Magallanes v. Norfolk Southern Ry. Co., 09-0605 (La.App. 4 Cir. 10/14/09), 23 So.3d 985, also a suit for personal injury, one of the defendants filed a motion for summary judgment which the trial court denied. After it filed a motion for new trial, the trial court reversed itself and granted the summary judgment, dismissing the defendant from the case. Citing Carter, we first noted that a motion for new trial pursuant to La. C.C.P. art.1974 applies only to final judgments. We then held:
The proper procedure for obtaining a reconsideration of the motion for summary judgment which has been denied is to re-urge the motion itself by re-filing it prior to trial. Young v. Dupre Transport Co., 97-0591 (La.App. 4 Cir. 10/1/97), 700 So.2d 1156, 1157. In his concurrence in Carter, supra, Judge To-bias noted:
[A] literal reading of La. C.C.P. art. 1974, authorizing motions for new trial, makes it applicable to final judgments only.... The majority makes our practice conform to the literal language of La. C.C.P. art. 194 and the jurisprudence from two other appellate circuits.... Now, in order to accomplish the same result as a motion for new trial, one must file a brand new motion (with appropriate attachments) addressing the identical issue as a previous motion that |¶ resulted in an allegedly erroneous interlocutory degree.
Carter, 01-0234 at p. 6, 785 So.2d at 1026. (Footnote omitted).
Magallanes, 09-0605, p. 4, 23 So.3d at 988.
As we concluded in Magallanes, the trial court in this matter erred as a matter of law by reconsidering the denial *1278 of the motion for summary judgment through the procedural vehicle of a motion for new trial and in rendering summary judgment, dismissing Maryland from this lawsuit with prejudice. Id., 09-0605, p. 5, 23 So.3d at 989.
We distinguish this case from Louisiana Stadium & Exposition Dist. v. BFS Diversified Products, LLC, 10-0587 (La.App. 4 Cir. 9/15/10), 49 So.3d 49, writ denied, 10-2278 (La.11/24/10), 50 So.3d 831. While the procedural history in that case is somewhat unclear, it appears that the insured filed a motion for summary judgment, seeking defense and indemnity from its insurer and the insurer filed a cross-motion for summary judgment seeking a determination that it had no duty to defend. The insurer’s motion also sought a determination that it had not acted in bad faith. The opinion is silent as to whether the trial court granted or denied the various motions. However, the opinion indicates that the trial court “initially ruled that [insurer] did owe a duty to defend” but that it had not acted in bad faith. Id., 10-0587, p. 2, 49 So.3d at 50. Clearly, the trial court’s ruling granted the insured’s summary judgment motion on the duty to defend (and at the same time, denied the insurer’s motion on this issue) and granted the insurer’s summary | ^judgment motion on the issue of bad faith. The trial court’s grant of the motion for new trial was proper in that case, as such a motion may be filed after the grant of a motion for summary judgment which is also is a final judgment. See, e.g. Bernard v. Ellis, 11-2377 (La.7/2/12), 111 So.3d 995; Orleans Dist. Redevelopment Corp. v. Fein, 11-1634 (La.App. 4 Cir. 4/18/12), 90 So.3d 1199.
This case is also distinguishable from Mandina, Inc. v. O’Brien, 13-0085 (La.App. 4 Cir. 7/31/13), — So.3d -, 2013 WL 3945030. In that case, in which this Court converted an appeal to a supervisory writ, the trial court initially granted a summary judgment, which was a final judgment. It then granted a new trial, reversed itself and denied the summary judgment, designating that judgment as final. Again, the motion for new trial was appropriate in that case given the trial court’s initial granting of the summary judgment motion was a final judgment.
Based on the foregoing, we vacate the judgment of the trial court and remand this matter for further proceedings. Because of our reversal of the trial court’s judgment, we need not address any other issues herein, including the timeliness of plaintiffs Answer to the appeal.
VACATED AND REMANDED.

.According to its answer, LSED is the owner of the Superdome, while SMG manages it.

.The record does not reflect an appearance on behalf of FPLA.

.According to the agreement between Es *1274 sence and FPINO, FPINO’s responsibilities also included procuring talent, air travel and hotel accommodations, selecting venues, and "effectuating the technical and creative aspects.”

. On September 10, 2012, Maryland supplemented its Motion for Summary Judgment so as to provide deposition testimony and discovery responses which it argued established that it was not responsible to inspect, maintain and clean the floor area where plaintiff fell. Rather, based on this evidence, it was SMG who had that responsibility. Thus, it argued, summary judgment in its favor was further warranted.

. LSED and SMG filed a supervisory writ of review with this Court on the November 2, 2012 judgment; this Court, finding the judgment to be final and appealable, converted the writ application to an appeal. LSED and SMG entered into a compromise with plaintiff and subsequently dismissed their appeal.

. The judgment is mistakenly dated February 22, 2012; this is clearly a typographical error.

. Essence dismissed this appeal on August 29, 2013 (indeed, the February 22, 2013 judgment was rendered in its favor).

. In fact, the judgment granting Maryland’s Motion for Summary Judgment was not issued until March 5, 2013. This February judgment pertained to Essence's Motion for Summary Judgment.

. Plaintiff did not brief nor otherwise address the issue of Essence’s dismissal and we do not consider it in this opinion. See Alden v. Leming, 04-0724, (La.App. 4 Cir. 5/4/05), 904 So.2d 24, 30 ("pursuant to Rule 2-12.4 of the Uniform Rules — Courts of Appeal, ‘the court may consider as abandoned any specification of assignment of error which has not been briefed.' ")

.Maryland's motion to dismiss Essence’s notice of appeal was made moot by its August 29, 2013 dismissal of its appeal (See: footnotes 5, 7).

. La. C.C.P. art.1915 provides, in pertinent part:
A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court: (3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).