668 So.2d 721 (1996)
Julia McCARTHY, wife of James McCarthy
v.
William BERMAN, D.C., National Chiropractic Mutual Insurance Company, and Allstate Insurance Company.
No. 95-CC-1456.
Supreme Court of Louisiana.
February 28, 1996.
Rehearing Denied March 29, 1996.
*722 Jefferson Randolph Tillery, Suzanne Michele Ray, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Applicant.
Hugh M. Glenn, Jr., Gregory John McDonald, Bienvenu, Foster Ryan & O'Bannon, New Orleans, Scott Alan Cannon, New Orleans, Bobby Ray T. Malbrough, Metairie, for Respondent.
LEMMON, Justice.[*]
The issue presently before the court in this chiropractic malpractice action is whether the "Incidental Medical Malpractice Liability" coverage in the comprehensive business insurance policy issued to a chiropractor provides coverage for the injuries the chiropractor allegedly caused in treating plaintiff.

I
Alleging that she had sustained an injury to her cervical spine during chiropractic treatment by Dr. William Berman,[1] plaintiff *723 filed this action against (1) Dr. Berman, (2) National Chiropractic Mutual Insurance Company, Dr. Berman's medical malpractice insurer, and (3) Allstate Insurance Company, Dr. Berman's comprehensive business insurer.[2] Allstate filed an answer denying coverage of Dr. Berman under its policy.
Allstate then filed a motion for summary judgment. In support of its motion, Allstate argued that its policy was not a professional malpractice policy, but rather was a limited business liability policy that expressly excluded injuries arising out of the rendering of professional services, and that its policy's incidental medical malpractice liability coverage expressly excluded persons engaged in the occupation of furnishing medical services. Allstate further argued that its policy was not an excess policy or an umbrella policy.
The trial court denied Allstate's motion, stating that there were genuine issues of material fact for trial. The judge further noted that the incidental medical malpractice provision was ambiguous and subject to more than one interpretation.
Allstate then filed an application for supervisory writs, which was denied by the court of appeal. On application for certiorari, this court remanded the case to the court of appeal for briefing, argument and an opinion. 94-2856 (La. 2/3/95); 649 So.2d 396.
On remand, the court of appeal again denied Allstate's application for supervisory writs in a full written opinion. 94-778 (La. App. 5th Cir. 5/10/95); 656 So.2d 717. Noting (contrary to the ruling of the trial court) that there was no genuine issue of material fact, the intermediate court held that Allstate was not entitled to judgment as a matter of law because the policy exclusions, characterized by the court as "exclusion[s] by implication," were ambiguous and must be construed in favor of coverage.
Allstate applied to this court for certiorari. This court seldom grants certiorari applications involving interlocutory judgments in which both lower courts have simply refused to grant motions for summary judgment and allowed the case to go to trial. However, the court of appeal in the present case on remand decided the coverage issue as a matter of law. Because this court previously remanded the case to the court of appeal for an opinion deciding the merits and because a majority of this court tentatively believed the decision by the intermediate court on the merits was in error, this court granted certiorari. 95-1456 (La. 6/30/95); 657 So.2d 1005.

II
The comprehensive business liability policy,[3] issued by Allstate to Dr. William S. Berman d/b/a Berman Chiropractic, provided two types of coverage, Coverage ABusiness Property and Coverage BBusiness Liability. Under Coverage B was Part One Comprehensive Liability, which covered the business liability of insured persons in pertinent part as follows:
Part OneComprehensive Liability
Liabilities Covered
We will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect.... (emphasis added).
The exclusions to Coverage B-Business Liability coverage included:
We will not pay for:
. . . . .
21. Any accidental event, personal injury, or advertising injury, arising out of the rendering of or the failure to render scientific or professional services, or consulting business or technical services. This exclusion does not apply to Incidental Medical Malpractice Liability. (emphasis added).
Thus, Coverage B-Business Liability generally covered Dr. Berman's liability for damages arising out of personal injury, except when the personal injury arose out of the *724 rendering of or the failure to render professional services, as in the present case. This exclusion is typical of the professional services exclusion generally found in comprehensive business liability policies, because coverage for such exposure is provided by special policies. William Shelby McKenzie & H. Alston Johnson, III, Insurance Law and Practice, 15 Louisiana Civil Law Treatise § 201 (1986). Special policies covering professional liability do not replace comprehensive general liability insurance, but provide protection for professional errors and omissions that are usually excluded by comprehensive general liability policies.[4]Id.
Coverage B also provided the following coverage, in addition to the general coverage:
Incidental Medical Malpractice Liability:
We will also pay of behalf on persons insured all sums which they become legally obligated to pay for bodily injury arising out of the rendering of or failure to render the following services while this policy is in effect:

1. Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection with these services, or
2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

However, this coverage does not apply to persons insured if they are engaged in the business or occupation of providing any of the services described in (1) and (2) above. (emphasis added).
As noted earlier, Exclusion No. 21, which excluded coverage for personal injury arising out of the rendering of professional service, applied to the broad general coverage under "Liabilities Covered," but was expressly inapplicable to the "Incidental Medical Malpractice Liability" coverage. The case on summary judgment therefore turns on the interpretation of the coverage and exclusion in the incidental medical malpractice coverage provision.

III
The court of appeal, instead of using the acts expressly described in the incidental medical malpractice liability coverage provision to determine the extent of that coverage, erroneously referred to the definitions of "health care provider" and "malpractice" in La.Rev.Stat. 40:1299.41 A(1) and (8).[5] On this basis, the court postulated the theory that only a health care provider can commit medical malpractice under the policy and concluded that "it is only a health care provider who can commit `incidental medical malpractice' as well." The court, in effect, reasoned that if only a health care provider can commit incidental medical malpractice and all health care providers are excluded from the coverage, then the coverage applies *725 to no one (except, in some circumstances, the employer of the health care provider). Quoting Seals v. Morris, 423 So.2d 652, 656 (La. App. 1st Cir.1982), the court held the pertinent exclusion of incidental medical malpractice liability coverage ineffective on the basis that "[a] policy can not in one instance declare there is express coverage and in a second provision declare effectually there is not coverage." 94-778, p. 5; 656 So.2d at 720.
We might agree with the basic tenet of the court of appeal that an insurance policy cannot purport to provide coverage which applies to no one because of a policy exclusion that overrides all of the coverage provided. However, that tenet cannot fairly be applied in this case.
At the outset, we disagree with the court of appeal that only professional health care providers can commit the acts covered under the incidental medical malpractice coverage.[6] In defining the acts of "incidental medical malpractice" to be covered, the policy did not adopt La.Rev.Stat. 40:1299.41 A(8)'s definition of malpractice, a definition that was designed to limit the liability of qualified health care providers. Rather, the policy expressly stated the acts or omissions that Allstate agreed to cover as incidental medical malpractice, namely "the rendering of or failure to render ... medical, surgical, dental, x-ray or nursing service or treatment" and "[t]he furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances." Persons other than health care providers clearly can commit the acts described in the policy.
Moreover, this comprehensive business liability insurance policy does not extend incidental medical malpractice coverage to persons insured under the policy and then exclude every insured person from coverage. This policy, which was designed to insure all types of businesses, first excludes from its general business coverage any personal injury arising out of professional services, but then provides incidental coverage to the named insured and his employees who incidentally render medical treatment or dispense medicine in the course of business operations, but who would not be expected to be covered by special professional insurance.[7] The incidental medical malpractice liability coverage was obviously intended to be just thatcoverage for the named insured or his insured employee whose act or omission that may generally be characterized as medical malpractice was incidental to, rather than part of, the insured person's business or occupation.
Inasmuch as this "incidental" coverage was obviously intended for the benefit of non-health care businesses, the policy expressly declared this coverage inapplicable when the insured was in the business or occupation of furnishing the services that were rendered or omitted. When the insured is in the business of rendering such services, the policy contemplated that such acts or omissions would be covered by a special medical malpractice liability policy and not by an incidental coverage in a business liability policy.
In summary, Allstate's policy's Coverage B-Business Liability generally covers liability for damages arising out of personal injury, but that coverage is excluded by Exclusion No. 21 when the personal injury arises out of the rendering of or failure to render professional services of any kind.
Allstate's policy further provides incidental coverage for damages for bodily injury arising *726 out of the rendering of or the failure to render medical treatment, and Exclusion No. 21 is specifically inapplicable to this incidental coverage. However, because this incidental coverage was intended to protect businesses not in the health care field whose employees might incidentally dispense medicine or render medical treatment in the course of business operations, this coverage applies only if the insured person is not engaged in the business or occupation of rendering such treatment and therefore would not be expected to be covered by special professional insurance. See Employers Mutual Co. v. Oppidan, 518 N.W.2d 33 (Minn.1994) (holding that coverage provided by an incidental medical malpractice endorsement does not apply to the insured, an owner and operator of a live-in facility for mentally handicapped individuals, because he was engaged in the business of furnishing or dispensing drugs).
Finally, an ambiguity exists in an insurance policy when the pertinent provision can reasonably be construed in two different ways. The term "also pay" in the incidental coverage provision clearly means coverage in addition to other policy coverage and cannot reasonably be interpreted to mean coverage supplemental to other medical malpractice policies. And the overall incidental medical malpractice provision cannot reasonably be construed as "excess" or "umbrella" coverage for medical malpractice liability.
For these reasons, the judgment of the court of appeal is set aside, the motion for summary judgment is granted, and Allstate Insurance Company is dismissed from the action.
WATSON, J. dissents and assigns reasons.
CARTER and JOHNSON, JJ., dissent for reasons assigned by WATSON, J.
WATSON, Justice, dissenting.
Medical malpractice is a technical term which must be given its technical meaning. LSA-C.C. art. 2047. Only a health care provider can commit medical malpractice.
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. La.R.S. 40:1299.41(A)(8).
Both the trial court and the court of appeal puzzled over the "Incidental Medical Malpractice Liability" provision. The provision states that it will "also pay," indicating that it is an additional type of coverage. However, no medical malpractice coverage is provided. The stated coverage is taken away in the next sentence which denies medical malpractice coverage to anyone in the business or occupation of providing medical treatment; i.e., anyone who could be guilty of medical malpractice. The question becomes whether Allstate's policy can legally purport to provide a coverage which it does not in fact furnish to anyone.
Allstate contends that a school nurse or a first aid dispenser might qualify, but he or she would be: (1) in a nursing or medical occupation; or (2) in the occupation of dispensing medical supplies. The negligence of others, not health care providers, would not constitute medical malpractice.
Since Dr. Berman only had $100,000 in malpractice insurance and is not a qualified health care provider under Louisiana's Medical Malpractice Act, it is unlikely he intended to purchase a $2 million "customizer" business liability policy covering "Dr. William S. Berman DBA Berman Chiropractic" without medical malpractice coverage.
An insurer may certainly exclude medical malpractice coverage in a business liability policy. However, a company cannot purport to provide malpractice insurance by stating that there is coverage and nullify that coverage in the next sentence. Coverage cannot be bestowed with the right hand and taken with the left land. Seals v. Morris, 423 So.2d 652 (La.App. 1st Cir.1982), writ granted on other grounds, 433 So.2d 686.
*727 Exclusions are exceptions to coverage. They cannot be so broad that they extinguish any possible claim.
A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. C.C. art. 2049.
Employers Mutual Co. v. Oppidan, 518 N.W.2d 33 (Minn.1994), which enforced an identical policy provision, has not been cited as authority in any other case, and I do not find it persuasive.
The conflicting and contradictory language in Allstate's medical malpractice liability provision renders it ambiguous. Credeur v. Luke, 368 So.2d 1030 (La.1979). The ambiguity requires that the contract be interpreted liberally in favor of coverage. Id.
In addition, Allstate may owe medical payments, and this obligation defeats summary judgment.
The majority finds clear and obvious that which the trial court and the court of appeal found puzzling and confusing. Since I agree with the courts below, I respectfully dissent.
NOTES
[*] Judge Burrell J. Carter, Court of Appeal, First Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J. Kimball, J. not on panel. Rule IV, Part 2, § 3.
[1] Plaintiff alleged that Dr. Berman injured her by a "radical procedure" in which he placed a large towel around her head and chin, and then violently jerked her head.
[2] Allstate was brought into the action by an amended petition which alleged that Allstate provided "excess/umbrella/medical malpractice liability insurance" to Dr. Berman.
[3] The policy was labeled as a "Special Form Customizer Policy."
[4] Dr. Berman in fact had a special policy covering his liability for professional malpractice. However, he apparently failed to fulfill the other requirements for protection under the Medical Malpractice Act.
[5] La.Rev.Stat. 40:1299.41 A(1) and (8) provides:

A. As used in this Part:
(1) "Health care provider" means a person, partnership, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, or any nonprofit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C.A. § 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or an officer, employee or agent thereof acting in the course and scope of his employment.
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
[6] Even if the policy could reasonably be construed to adopt La.Rev.Stat. 40:1299.41 A(8)'s definition of medical malpractice, we disagree with the court of appeal that only health care providers can be guilty of medical malpractice. A business tortfeasor who initially injures a tort victim may be additionally liable for medical malpractice by others in the treatment of the victim's injuries, and such liability would be covered by the incidental coverage of this policy. Weber v. Charity Hosp. of La. at New Orleans, 475 So.2d 1047 (La.1985). Or a company outside the health care business may be liable for the medical malpractice of the company doctor or nurse, and this policy provision would cover the company (but not the doctor or nurse).
[7] For example, a construction company with a movable office at the construction site would be covered by this provision (but would be excluded from the broad general coverage) if the office manager gave first aid or dispensed medicine that caused personal injury. The manager would also be covered unless he or she was in the occupation of providing such services.