DAVID S. GORBATY, Judge.
| ¶ RoofTeeh Consultants, Inc. (RoofTeeh) and U.S. Specialty Insurance Company (U.S.Specialty) appeal three judgments of the district court whereby a motion for new trial was granted to United States Fidelity & Guaranty Company (USF & G) and claims by U.S. Specialty and RoofTeeh against USF & G for an obligation to defend RoofTeeh, reimbursement of expenses or costs, and/or bad faith were dismissed, with prejudice. For the following reasons, we affirm.
PROCEDURAL HISTORY:
The underlying facts of this matter are simple: The roof of the Louisiana Super-dome was virtually destroyed by Hurricane Katrina. Following the storm, the Louisiana Stadium & Exposition District and its insurers filed suit against Roof-Tech, its insurers and others for deficient design of the roof that was placed on the structure in 2000, 2001 and 2002. U.S. Specialty, RoofTech’s professional liability insurer, provided a defense to RoofTeeh pursuant to the terms of the policy. USF & G, RoofTech’s commercial general liability insurer, refused to provide a defense.
| ?RoofTech subsequently filed a third party demand against USF & G asserting its right to a defense and indemnity, and for attorneys’ fees and penalties for failure to honor its obligations under the policy. U.S. Specialty settled the claims of plaintiffs against RoofTeeh, and joined Roof-Tech in demanding relief from USF & G.
In August 2009, the trial court heard cross-motions for partial summary judgment filed by the parties. RoofTeeh and U.S. Specialty were seeking a judgment requiring USF & G to reimburse the costs paid for defending RoofTeeh, with interest, and for penalties and attorneys’ fees for failure to defend. USF & G filed a cross motion seeking a summary judgment declaring that it owed no duty to defend RoofTeeh and that it had not acted in bad faith in denying such defense. USF & G further urged that if the trial court found that it did owe a duty to defend, the defense costs should be allocated between it and U.S. Specialty on a pro rata basis.
The trial court initially ruled that USF & G did owe a duty to defend RoofTeeh, but that USF & G had not acted in bad faith. The issue of costs was taken under advisement, and on September 21, 2009, the trial court ruled that the costs to defend RoofTeeh should be allocated between the two insurers on a pro rata basis based on policy limits.
USF & G moved for a new trial on the duty to defend issue, and RoofTeeh and U.S. Specialty moved for a new trial on the bad faith and allocation of costs issues. *51 Again taking the matters under advisement, on December 2, 2009, the trial Iscourt granted USF & G’s motion for new trial, holding that USF & G had no duty to defend RoofTech based on the professional services exclusion in the USF & G policy. Subsequently, judgments were rendered dismissing all claims by RoofTech and U.S. Specialty for bad faith and reimbursement of defense costs. U.S. Specialty and Roof-Tech timely appealed the granting of the new trial and the dismissal of their claims against USF & G.[1]
LAW AND ANALYSIS:
Whether a liability insurer has a duty to defend its insured is determined by application of the “eight corners” rule, which means that the court must look at the four corners of the petition and the four corners of the policy in question. See, e.g., Johnson v. Misirci, 06-1136 (La.App. 4 Cir. 3/28/07), 955 So.2d 715; Mossy Motors, Inc., v. Cameras America, 04-0726 (La.App. 4 Cir. 3/2/05), 898 So.2d 602; also see Bryant v. Motwani, 96-1351 (La.App.4 Cir.10/30/96), 683 So.2d 880. “The duty to defend is determined solely from the plaintiffs pleadings and the face of the policy, without consideration of extraneous evidence.” Motwani, 96-1351, 683 So.2d at 884.
The petitions filed herein reveal the following:
SMG Partnership, the entity that operates and manages the Superdome, hired an architectural firm to design and engineer a new roof for the Superdome in 2000. That architectural firm in turn hired subcontractors to act as consultants, among l4other things, in the construction of the new roof. RoofTech was retained as a roofing consultant. The architect and consultants designed and managed the roof project, by aiding in the performance of the work, including analyzing roofing system alternatives, developing an installation plan for components of the roof, monitoring the installation and rendering advice regarding the project. Five roofing system alternatives were developed, with one ultimately being chosen.
Other companies hired by the architect actually installed the new roofing system. Part way through the installation, consultants (one of which was RoofTech), recommended a change in the way the layers of roof were adhered to the building. This recommendation was accepted and utilized. Despite the fact that the wind speeds recorded for Hurricane Katrina were within the parameters for the roofing system’s performance, the roof failed.
Count Five of the First Supplemental, Amending and Superseding Petition, captioned “Professional Negligence,” asserts:
The Architect and Consultants participated in, advised and made recommendations regarding all aspects of the Roofing System evaluation, design and installation. Plaintiffs relied on the Architect’s and Consultants’ professional advice in making decisions related to the Roof Project. The Roofing System ultimately failed, in whole or in part, due to work negligently performed by and/or advice negligently rendered by the Architect and Consultants. The Architect and Consultants were negligent, inter alia, in rendering improper and/or unsound professional advice related to the *52 Roof Project, and are liable for all damages to Plaintiffs.
RoofTech attempts to cloud the issue by-suggesting that not all of the services it performed were professional in nature and, therefore, the “non-|professionals” services should be covered by the commercial general liability policy issued by USF & G. For example, inspection and monitoring services did not require any professional level of expertise. RoofTech argues that monitoring simply means to watch over and supervise which requires no special skills or training. This argument is ludicrous. Plaintiffs were relying on the special skills and training of RoofTech’s employees in the area of roofing, particularly on a job of this magnitude. If one follows RoofTech’s argument to its absurd result, then a plumber’s helper would be qualified to inspect and monitor the project because he would only have to see that the work was being done, not that it was being performed in compliance with the specifications.
It is clear to this Court that the various petitions and allegations contained therein relative to RoofTech indicate that Roof-Tech was hired to serve in a professional service capacity, which logically included monitoring the work and assuring that it was done correctly.
An endorsement to the policy issued by USF & G to RoofTech, which changes the definition of professional services as contained in the original policy, states: “ ‘Professional services’ mean [sic] any service requiring specialized skill or training.” The liability coverage part of the policy states in Section L, entitled “Professional Services,” “(1) This insurance does not apply to ‘bodily injury’, ‘property damage’, or ‘personal injury’ or ‘advertising injury5 arising out of any rendering of, or failure to render, any ‘professional services’ by or on behalf of any insui’ed.”
The Supreme Court distinguished between coverage under a professional services policy and a commercial general liability policy in McCarthy v. Berman, 95-1456 (La.2/28/96), 668 So.2d 721. In that case, a plaintiff argued that the | abroad language of the defendant’s commercial general liability (CGL) policy covered her injuries, which she sustained as a result of treatment by the defendant chiropractor. The Fifth Circuit Court of Appeal had addressed the merits of the case and agreed with the plaintiff that the language contained in “liabilities covered” section of the policy was broad enough to encompass the claims brought by the plaintiff. McCarthy v. Berman, 94-778 (La.App. 5 Cir. 5/10/95), 656 So.2d 717. Justice Lem-mon, writing for the Supreme Court, set aside that judgment and granted the CGL insurer’s summary judgment. Justice Lemmon explained:
“This exclusion is typical of the professional services exclusion generally found in comprehensive business liability policies, because coverage for such exposure is provided by special policies. Special policies covering professional liability do not replace comprehensive general liability insurance, but provide protection for professional errors and omissions that are usually excluded by comprehensive general liability policies.”
McCarthy, 95-1456, 668 So.2d at 724 (internal citations omitted).
After examining the four corners of the petitions filed in this matter and the four corners of the policy in question, it is clear that the professional services exclusion contained in the USF & G policy is applicable. RoofTech was hired for its expertise in the specialized roofing business; it is not far-reaching to find that all of the services it rendered in connection with this three-year massive project were professional in nature.
*53 Accordingly, we find the trial court did not err in granting USF & G’s motion for new trial, and the subsequent grant of summary judgment in its favor. The remaining assignments of error averred on behalf of RoofTeeh and U.S. Specialty are thereby rendered moot.
AFFIRMED.

. In writ No. 2010-C-0136, a panel of this Court gave U.S. Specialty permission to include in its appeal an assignment of error as to the trial court’s September 21, 2009 ruling on allocation of costs. This is not an appeal-able issue since it was a denial of a summary judgment. However, because we are affirming the judgments on appeal, the issue of allocation of costs becomes moot.