# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 16, 2014

Lyle W. Cayce
Clerk

No. 13-31125

WISZNIA COMPANY, INCORPORATED, doing business as Wisznia and Associates,

Plaintiff–Appellant

v.

GENERAL STAR INDEMNITY COMPANY,

Defendant–Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

## I.     INTRODUCTION AND BACKGROUND

Plaintiff–Appellant Wisznia Company, Incorporated ("Wisznia"), an architecture firm, sued its general-liability insurer, Defendant–Appellee General Star Indemnity Company ("General Star"). Wisznia sought to recover its costs in defending a lawsuit brought by its former client, Jefferson Parish. Wisznia contends General Star was obligated to defend Wisznia against the civil suit brought by Jefferson Parish under the terms of two insurance policies. In the underlying lawsuit, Jefferson Parish essentially asserted Wisznia improperly designed a building and did not adequately coordinate with the builders during its construction.

No. 13-31125

General Star refused to defend Wisznia and asserted that the relevant insurance policies excluded coverage for damages arising from the rendering of professional services.   After removing the case to federal court under diversity jurisdiction, General Star moved for summary judgment arguing it had no duty to defend Wisznia.   The district court agreed and granted summary judgment because the allegations in Jefferson Parish's petition "pertained to the rendering of or failure to render professional services by Wisznia," and entered final judgment for General Star.   Wisznia timely appealed.   For the reasons stated below, we affirm.

## II.   JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction based on diversity of citizenship because Wisznia, a Louisiana corporation with its principal places of business in Louisiana, is diverse from General Star, a Connecticut corporation with its principal place of business in Connecticut.   *See* 28 U.S.C. § 1332(a).   We have jurisdiction to review the district court's final judgment.   28 U.S.C. § 1291.   We review a grant of summary judgment de novo.   *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).   Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   We view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.   *Coleman*, 113 F.3d at 533.

A federal court sitting in diversity applies the substantive law of the forum state, in this case Louisiana.   *See Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013).   We review the district court's determination of Louisiana state law de novo.   *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 562 (5th Cir. 2013).   "To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court."   *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).   In the absence of a decision by the

No. 13-31125

Louisiana Supreme Court, we predict how, in our best judgment, that court would decide the question. *Id.* We do so with the principle in mind that under Louisiana's civil law tradition, we must first examine "primary sources of law"—the constitution, codes, and statutes—because "'[j]urispurdence . . . is a secondary law source in Louisiana.'" *Id.* (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999)). Accordingly, we are not strictly bound by Louisiana intermediate appellate courts; however, we will not disregard them "unless we are convinced that the Louisiana Supreme Court would decide otherwise." *Id.* (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 261 (5th Cir. 2003)).

## III.  DISCUSSION

Wisznia's sole contention on appeal is that the district court erred in concluding General Star owed Wisznia no duty to defend it in its case against its former client, Jefferson Parish, and in granting General Star's motion for summary judgment. Wisznia argues the professional-liability exclusion in its general-liability insurance policies issued by General Star did not unambiguously exclude coverage and, therefore, the policies obligated General Star to defend Wisznia. Thus, decision on this question requires us to predict how the Louisiana Supreme Court would interpret the insurance policies that General Star issued to Wisznia, so we begin by reviewing principles of insurance law articulated by the Louisiana Supreme Court.

## A.    Louisiana Insurance Law

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003-1801, p. 3 (La. 2/25/04); 869 So. 2d 96, 99. The Louisiana Civil Code provides that "[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract" by construing

3

No. 13-31125

words and phrases "using their plain, ordinary and generally prevailing meaning." *Id.* (citing La. Civ. Code Ann. arts. 2045, 2047).

**B.    The Duty to Defend**

Insurance policies generally provide that the insurer has the right and, indeed, the duty to defend the insured. *See, e.g.*, *Hartford Accident & Indem. Co. v. United Gen. Ins. Co.*, 855 F.2d 228, 231 (5th Cir. 1988). When the insurance policy clearly provides coverage for damages allegedly caused by the insured, the insurer is usually eager to defend the insured to limit its liability; difficulties arise when the insurer concludes there is no coverage. 15 William Shelby McKenzie & H. Alston Johnson, III, *Louisiana Civil Law Treatise* § 7:2 & n.1 (4th ed. 2013).

Under Louisiana law, the insurer's duty to defend suits against its insured "is broader than its liability for damage claims." *Am. Home Assurance Co. v. Czarniecki*, 230 So. 2d 253, 259 (La. 1969). Thus, Louisiana courts decide the scope of the insurer's duty to defend by comparing the insurance policy to the "the allegations [in] the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." *Id.* Under the "eight-corners rule," courts compare the four corners of the petition with the four corners of the insurance policy without resort to extrinsic evidence. *See Marco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009) (citing *Adams v. Frost*, 43,503, p. 9 (La. App. 2 Cir. 8/20/08); 990 So. 2d 751, 756); 15 McKenzie & Johnson, *supra*, § 7:2 & n.11 ("Courts have referred to this comparison as the 'eight-corners' rule—the four corners of the petition are compared with the four corners of the insurance policy." (citing *Vaughn v. Franklin*, 2000-0291 (La. App. 2 Cir. 3/28/01); 785 So. 2d 79).

In applying the eight-corners rule, ambiguous terms in the insurance policy are strictly construed against the insurer. *Mayo*, 869 So. 2d at 100; Although the allegations in the petition are "liberally interpreted" in favor of

the insured, *Am. Home Assurance Co.*, 230 So. 2d at 259, "[i]t is well settled that the allegations of *fact*, and *not conclusions*, contained in the petition determine the obligation to defend."  15 McKenzie & Johnson, *supra*, § 7:2 & n.9 (emphasis added) (collecting cases); *accord In re Stone Petroleum Corp.*, 961 F.2d 90, 92 (5th Cir. 1992) ("Only the factual allegations of the pleadings are considered for purposes of analyzing the duty to defend [under Louisiana law;] [m]ere conclusions are irrelevant.").  Under Louisiana law, General Star "bears the burden of proving the applicability of [the] exclusionary clause." *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124, *misstatement of fact in the opinion corrected on reh'g*, 2000-0947 (La. 3/16/01), 782 So. 2d 573.

## C.    The Four Corners of Jefferson Parish's Petition Against Wisznia

The parties disagree about the legal significance of the allegations in Jefferson Parish's petition against Wisznia.  Wisznia argues that the "Jefferson Parish Suit's Petition alleged that Wisznia was liable for both professional liability and ordinary negligence."  Wisznia directs the court to paragraphs XIX, XX, XLIX, and LI of Jefferson Parish's petition to support this argument.  General Star concedes the petition includes the word "negligence," but characterizes this word as a "catch-all allegation."  General Star directs the court to paragraph XLIX of the petition as evidence that "there can be no possible claim that Wisznia allegedly breached any general duty of care to report unsafe conditions or protect persons."  Based on the factual allegations in the petition, General Star argues that the district court correctly concluded that every one of these factual allegations "pertained to the rendering of or failure to render professional services by Wisznia," and that "[n]ot one factual allegation supported a claim for simple, non-professional negligence." (alteration in original) (quoting the district court's opinion).

No. 13-31125

We turn now to examine the factual allegations in the petition, construing the allegations liberally in favor of Wisznia, the insured. Therein, Jefferson Parish alleged it entered into a "design contract" with Wisznia for design of the Performing Arts Center, "an ongoing construction project." Under this agreement, Jefferson Parish alleged that "WISZNIA agreed to use its professional architectural engineering and construction administration skills and knowledge to prepare plans and specifications containing design, technical, and other data and professional opinions for the design of [the arts center]." Jefferson Parish also alleged:

> WISZNIA warranted that the professional services . . . would be conducted in a manner that reflects the highest standards of professional care and impliedly warranted that the professional services would be free of defects, and that the completed project . . . would result in a fully functional facility, fit for its intended uses.

Jefferson Parish went on to allege that "[a]s a direct and proximate result of WISZNIA's breach of its contractual warranty, negligence, and lack of professional skill in designing [the performing arts center], THE PARISH has experienced and continued to experience certain problems with THE PROJECT that have arisen, and which continue to arise, during the ongoing construction project." The Parish also alleged that, under the design contract, "WISZNIA is obligated to indemnify and hold the Parish harmless for all damages, losses or claims that arise out of the breach of the design contract or the negligence, errors, omissions, failure to perform, or intentional acts of WISZNIA, its employees, agents, or consultants."

Finally, Jefferson Parish averred that "WISZNIA was negligent and breached its contractual and warranty obligations to the PARISH" by:

> a) Designing and preparing a defective set of plans and specifications for the project;

6

b) Failing to coordinate the design with its consultants in an effective and professional manner;

c) Failing to design [the performing arts center] with any accurate and sufficient structural detailing, requiring the modification of the building;

d) Failing to provide specification that were definite in concept;

e) Under-designing the project such that the design fails to meet WISZNIA's professional obligations to Petitioner; and

d) [sic] Any and all negligent acts and omissions and/or contractual or warranty breaches to be proven at trial.

As a "direct and proximate result of WISZNIA's negligence, failure of professional skill, breach of contract, and breach of warranty in the faulty design," Jefferson Parish alleged that it "has suffered damages and WISZNIA is liable to petitioner for any and all such damages occasioned by the negligence and/or breach of contract or warranty."

## D. The Four Corners of the General Star Insurance Policies

We turn now to the insurance policies that General Star issued to Wisznia.[1]     Under the heading "**EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY**," the policies provide as follows:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

The policies define "professional services" to include:

---

[1] There are two separate policies at issue in this appeal: a policy issued to Wisznia for 2008 and a policy issued for 2009. Because Jefferson Parish's allegations include Wisznia's conduct in both years and the policies are identical in all relevant respects, we analyze them together.

No. 13-31125

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection architectural or engineering activities.

**E.    Louisiana Case Law Evaluating Professional-Liability Exclusions Asserted by General-Liability Insurers**

The professional-liability exclusion at issue here is similar to the professional-liability exclusion at issue in *McCarthy v. Berman*, 95-1456, p. 4 (La. 2/28/96); 668 So. 2d 721, 723–24.   The insurance policy at issue in *McCarthy* provided: "We will not pay for: . . .  Any accidental event, personal injury, or advertising injury, arising out of the rendering of or the failure to render scientific or professional services, or consulting business or technical services."  668 So. 2d at 723.  There, the Louisiana Supreme Court described that exclusion as "typical of the professional services exclusion generally found in comprehensive business liability policies," also known as general-liability policies.  *Id.*  The court explained that coverage for professional "exposure is provided by special policies," *id.* (citing 15 McKenzie & Johnson, *supra*, § 201), and that these "[s]pecial policies covering professional liability do not replace comprehensive general liability insurance, but provide protection from professional errors and omissions that are usually excluded by comprehensive general liability policies."  *Id.* (footnote omitted).  In reversing the trial court on interlocutory appeal, the Louisiana Supreme Court held that the professional liability exclusion precluded coverage.  The court reasoned that the policy "was designed to insure all types of business [and] first excludes from its general business coverage any personal injury arising out of professional services."  *Id.* at 7.  The court held that "coverage is excluded by [the professional liability exclusion] when the personal injury arises out of the rendering of or failure to render professional services of any kind."  *Id.* at 8.

8

No. 13-31125

Because the duty to defend is broader than coverage, *McCarthy* is not directly apposite here; however, the underlying principles articulated by the Louisiana Supreme Court there in analogous circumstances inform our prediction of how that court would resolve this appeal.

Louisiana case law[2] teaches that a petition's invocation of the word "negligence" is insufficient to obligate a professional liability insurer to defend the insured. The Louisiana Fourth Circuit Court of Appeal's decision in *Louisiana Stadium & Exposition District v. BFS Diversified Products, LLC*, is instructive. 2010-0587 (La. App. 4 Cir. 9/15/10); 49 So. 3d 49. There, Hurricane Katrina essentially destroyed the roof of the Louisiana Superdome, even though the storm winds were within the roof's design parameters. *Id.* at 1. The stadium's owner sued the architect, RoofTech, and its insurers for defective design of the roof and included allegations of negligence. *Id.* RoofTech and its professional-liability insurer in turn sued RoofTech's general-liability insurer for the defense costs. *See id.* at 2. The trial court held that the general-liability insurer had no duty to defend Rooftech based on the professional-liability exclusion in the insurance policy, and Rooftech and its professional-liability insurer appealed. *Id.* at 2–3. The Louisiana Fourth Circuit Court of Appeal affirmed. The court applied the "eight-corners rule" and compared the professional-liability exclusion to the petition. In the petition, the plaintiffs alleged: "The Roofing System ultimately failed . . . due to work *negligently* performed by and/or advice *negligently* rendered by the Architect and consultants. The Architect and Consultants were *negligent.*" *Id.* at 3–4 (emphasis added). Despite the petition's repeated invocation of the word

---

[2] The parties do not direct this Court to binding authority from the Louisiana Supreme Court on the issue before us on appeal, and we are aware of none. Therefore, we turn to intermediate appellate decisions. *See Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) ("[I]n the absence of a ruling from the state's highest court, this Court may look to the decisions of intermediate appellate state courts for guidance.").

"negligence" in the underlying lawsuit, the court rejected as "ludicrous" Rooftech's argument that some tasks it performed were non-professional: "RoofTech was hired for its expertise in the specialized roofing business; it is not far-reaching to find that all of the services it rendered in connection with this three-year massive project were professional in nature." *Id*. at 6.

In contrast, if the factual allegations, liberally construed, give rise to an ordinary claim for negligence, then the general-liability insurer may be obligated to defend the insured. The Louisiana First and Third Circuit Courts of Appeal reached this conclusion in *Gregoire v. AFB Construction, Inc.*, 478 So. 2d 538 (La. Ct. App. 1985) (per curiam), and *CBM Engineers Inc. v. Transcontinental Insurance Co.*, 460 So. 2d 745 (La. Ct. App. 1984). In *Gregoire*, a construction company employee was injured when he came into contact with a high-voltage electricity wire while stringing telephone wires. The trial court held the general-liability insurer owed no duty to defend, finding that the employee's allegations related solely to liability for professional services which were excluded from coverage under the policy. *Gregoire*, 478 So. 2d at 540. The Louisiana First Circuit Court of Appeal reversed. *Id*. at 541. The court explained that the petition, liberally construed, included allegations that the engineers "were negligent in their supervision of the project and allowed the project to proceed when they knew, or should have known, the utility pole . . . was in an unreasonably dangerous condition." *Id*. The court reasoned that because these allegations "could be construed to include the breach of the general duty of reasonable care," the allegations did not solely relate to professional services. *Id*. The Louisiana Third Circuit Court of Appeal reached the same conclusion in *CBM Engineers*, in which two workers were severely injured, and one died, when an elevator used by construction workers fell. *Id*. at 746. The trial court found that the policy obligated the general-liability insurer to defend the engineering firm, and the

court of appeal affirmed. *Id.* at 747–48. The court explained that, liberally construed, the petition alleged liability for breach of the general duty of reasonable care "to report unsafe conditions, whether the hazard was caused by a failure or omission involving engineering, or from another source." *Id.* at 747.

## F.    Applying the "Eight-Corners Rule"

Applying the eight-corners rule, we predict that the Louisiana Supreme Court would hold that Jefferson Parish's petition, liberally construed, unambiguously excludes coverage. As in *Louisiana Stadium & Exposition District* and as the district court observed, every one of the factual allegations pertained to the rendering of professional architecture services. The damages claims are for breach of an agreement in which, Jefferson Parish alleged, Wisznia agreed to use its "professional architectural engineering and construction administration skills and knowledge to prepare plans and specifications containing design technical, and other data" for the design of the performing arts center. Jefferson Parish alleged the damages it suffered were the "direct and proximate result of WISZNIA's breach of its contractual warranty, negligence, and lack of professional skill." In short, Jefferson Parish alleged in its petition that it hired Wisznia to use its professional skills to design a building and coordinate its construction, and the building that Wisznia delivered did not pass muster. As in *Louisiana Stadium & Exposition District*, Jefferson Parish allegedly hired Wisznia "for its expertise," and "it is not far-reaching to find that all of the services it rendered in connection with [the performing arts center] project were professional in nature." 2010-0587, at p. 6. And as in *Louisiana Stadium & Exposition*, Jefferson Parish sued Wiznia because it was dissatisfied with the final product, the performing arts center.

11

Moreover, the factual allegations in the Jefferson Parish petition here do not give rise to an ordinary claim for negligence—such as an unreasonably dangerous work site—unlike the factual allegations in *Gregoire* and *CBM Engineers*. In both *Gregoire* and *CBM Engineers*, the injured petitioners alleged that the insured was responsible for dangerous conditions on the job site that implicated the insured's general duty of reasonable care: an exposed high-voltage electricity wire in *Gregoire* and an elevator that fell on construction workers in *CBM Engineers*. Thus, unlike the factual allegations in this case—which are comprised of allegations of defective building design and construction supervision—the allegations in *Gregoire* and *CBM Engineers*, liberally construed, included claims for breach of the general duty of reasonable care to report dangerous conditions. And as in *Louisiana Stadium & Exposition District*, Jefferson Parish's petition's repeated invocation of the word "negligence" is insufficient to obligate General Star to defend Wisznia. *See Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 523 (5th Cir. 2005) ("Under Louisiana law, [we decide] the scope of the duty to defend under an insurance agreement" by looking "only to the *factual* allegations in the complaint, however; 'statements of conclusions in the complaint that are unsupported by factual allegations will not trigger a duty to defend.'"). Thus, the professional-liability exclusion in the insurance policies unambiguously excludes coverage arising from Wisznia's design of the Jefferson Parish performing arts center.

Wisznia's reliance on our decision in *Stone Petroleum* is misplaced, because that case is consistent with our decision here. There, a maritime surveyor agreed to examine a barge, damaged by severe weather, to estimate the damage and cost of repair and to obtain repair bids. *Stone Petroleum*, 961 F.2d at 90–91. While under repair, the barge exploded, and the explosion and fire injured and killed many workers. *Id.* at 91. The barge owner sued the

maritime surveyor alleging he failed "to properly ensure that the production facility was safe for the specified work." *Id.* at 91–92. The surveyor's general-liability insurer declined to defend him because his policy excluded coverage for damages "due to the rendering of or failure to render any professional service." *Id.* at 91. After a bench trial, the district court held the claims against the surveyor were professional malpractice claims that did not trigger a duty to defend. *Id.* This Court reversed. Relying on *CBM Engineers* and *Gregoire*, we observed that, under Louisiana law, "[o]nly the factual allegations of the pleadings are considered for purposes of analyzing the duty to defend[;] [m]ere conclusions are irrelevant." *Id.* at 92. This Court nonetheless declined to strictly apply this rule because, it reasoned, to do so "would result in a direct conflict with the holdings and rationale of *Gregoire* and *CBM*," because strictly applying this rule, "taken to its natural conclusion, would jeopardize every insured's right to a defense in federal court merely because the action was initiated by a pure notice and not a fact pleading," in light of "the essential difference between the federal notice pleading standard and the Louisiana fact pleading rubric." *Id.* at 93.

*Stone Petroleum* is distinguishable from this case because, as in *Gregoire* and *CBM*, the petition alleged, *inter alia*, that the marine surveyor failed to ensure the job site "was safe for the specified work." *Id.*at 91–92. This is unlike *Louisiana Stadium & Exposition District* and this case in which the petition alleged the final product—the Superdome roof or the Jefferson Parish performing arts center—of professional services was unsatistfactory.

Moreover, the apprehension we expressed in *Stone Petroleum* is of no moment here because Jefferson Parish's petition, liberally construed, would not give rise to a claim for ordinary negligence under both the arguably more generous federal and the arguably more rigorous Louisiana fact pleading standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2010) ("Although for the

purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  To the extent we were concerned in *Stone Petroleum* that an insured may need additional defense in federal court, whereas in state court it would need none, due to the difference in pleading standards, we note that "we no longer apply the minimal standard of adequate pleading set forth in *Conley v. Gibson*, [355 U.S. 41, 45–46 (1957)]" in light of *Twombly* and *Iqbal*. *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).  Because the factual allegations in Jefferson Parish's petition do not give rise to a claim for ordinary negligence under even the arguably more generous federal pleading standard and are instead exclusively devoted to professional negligence, coverage is unambiguously excluded consistent with our decision in *Stone Petroleum*.  *See* 961 F.2d at 92 ("Only the factual allegations of the pleadings are considered for purposes of analyzing the duty to defend.  Mere conclusions are irrelevant.").

Therefore, the district court correctly concluded that General Star owed no duty to defend Wisznia because the insurance policies unambiguously excluded coverage for professional liability.

## IV.    CONCLUSION

For the foregoing reasons, we AFFIRM.

14