**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 13-51027

IRONSHORE SPECIALTY INSURANCE COMPANY,

Plaintiff - Appellant

v.

ASPEN UNDERWRITING, LIMITED; DORNOCH, LIMITED,

Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**
June 10, 2015

**Lyle W. Cayce**
Clerk

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and WIENER and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Despite the steady march of technological progress in the oil and gas industry, drilling remains dangerous. When tragic accidents happen—such as the fire at a Texas oil well owned by Endeavor Energy Resources that killed two men employed by Basic Energy Services and set this case in motion—the resulting litigation often turns into a coverage dispute between the insurers of the entities involved in the drilling activity.

That is the case here. Endeavor and Basic entered into a master services agreement (MSA) containing an indemnity provision in which they agreed to cover any liability resulting from claims brought by their own employees, even if the other party was at fault. They separately agreed to obtain at least $5 million of insurance that would cover claims asserted by their own employees

No. 13-51027

against the other party. The policies Basic obtained do not expressly limit the coverage for additional insureds like Endeavor to this $5 million.

With the total liability for the two fatalities likely exceeding $5 million, Endeavor's excess insurer, Ironshore Specialty Insurance Corporation, brought this case against Basic's excess insurers for a declaratory judgment. Ironshore contends that Basic's insurers are obligated to provide coverage up to the full limits of their policies because the policies do not expressly limit the coverage available to an additional insured like Endeavor.

In response, Defendants contend that the insurance policies incorporate a $5 million limit because the policies refer to the MSA. We agree, and affirm the district court's ruling in favor of Defendants. We reach this decision based in large part on *In re Deepwater Horizon*, --- S.W.3d ----, 2015 WL 674744 (Tex. Feb. 13, 2015), which issued after oral argument in this case.[1]

## I.

Endeavor owned and operated an oil well in Martin County, Texas. Basic contracted with Endeavor to perform services, including pumping brine into the well.[2] The MSA between Endeavor and Basic contained mutual indemnity provisions stating that each party would release the other from any liability for "all claims, demands, and causes of action of every kind and character, without limit," brought on behalf of each party's respective employees. ROA 1048. In other words, regardless of which party is sued or at fault, Basic would be liable for claims brought by Basic employees and Endeavor would be liable

---

[1] The parties in *Deepwater Horizon* reached a settlement after the Supreme Court of Texas's decision. Pursuant to that settlement, the court granted BP's motion to withdraw its petition for rehearing. *In re Deepwater Horizon*, No. 13-0670 (Tex. petition for rehearing withdrawn Mar. 29, 2015).

[2] Endeavor's affiliate, Exxcel Well Service, was also a party to the contract. For simplicity, this opinion refers to Endeavor Energy Resources and Exxcel Well Service collectively as "Endeavor."

No. 13-51027

for claims brought by Endeavor employees.

Another section of the MSA specified that the parties were required to obtain insurance:

> To support the indemnification provisions in this Contract but as a separate and independent obligation, each party shall . . . maintain, with an insurance company or companies . . .
>
> > (b)    Commercial (or Comprehensive) General Liability Insurance, including contractual obligations covered in this Contract and proper coverage for all other obligations assumed in this Contract., [sic] in the amount of $1,000,000 combined single limit per occurrence for Bodily Injury and Property Damage. . . .
> >
> > (d)    Excess Liability Insurance over that required in Paragraph . . . (b) . . . in the amount of $4,000,000, specifically including Contractual Liability.

ROA 1047–48.

Basic maintained insurance policies that provided this $5 million in coverage, but also a lot more. It had the following three policies providing total coverage of $51 million: $1 million per occurrence in primary commercial general liability coverage issued by National Union Fire Insurance Company and other subscribing underwriters; $10 million in first-layer excess liability insurance coverage issued by Aspen Underwriting Ltd. and other subscribing underwriters; and $40 million in second-layer excess liability insurance coverage issued by Dornoch, Ltd., and other subscribing underwriters. Besides naming Basic itself, Basic's excess policies define additional "Insured" parties as follows:

> The word "Insured", wherever used in this Policy, shall mean . . .
>
> > (c)    any person or entity to whom [Basic] is obliged by a written "Insured Contract" entered into before any relevant "Occurrence" and/or "Claim" to provide insurance such as is afforded by this Policy but only with respect to:

3

No. 13-51027

> i)     liability arising out of operations conducted by [Basic] or on its behalf . . . .

ROA 3828, 3890–91.  The policies define "Insured Contract" as

> any written contract or agreement entered into by [Basic] and pertaining to business under which [Basic] assumes the tort liability of another party to pay for "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" to a "Third Party" or organisation.

ROA 3769, 3890–91.  Endeavor also obtained insurance in three layers of coverage, but those policies provided only $21 million in total coverage.

In August 2010, a fire at the well killed two Basic employees.  The families of the men brought wrongful death suits in state court against Endeavor and made settlement demands in excess of $11 million.[3]  Ironshore then brought this diversity action in federal court seeking a declaration that Basic's excess insurers, Defendants Aspen and Dornoch,[4] must cover any Endeavor liability up to the limits of those policies.[5]  The parties filed cross

---

[3] The underlying state case later settled for an undisclosed amount.

[4] Basic's primary insurance provider, National Union, was not sued as it acknowledged its obligation to provide coverage up to the $1 million limit of its policy with Basic.

[5] One may wonder why Endeavor's insurer, Ironshore, could be on the hook for this liability if Basic agreed to indemnify Endeavor for all liability arising out of claims brought by Basic employees.  Although not discussed by the parties, the answer appears to be that the Texas Oilfield Anti-Indemnity Act imposes statutory limits on indemnity obligations in the oilfield context—in this case, "the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee."  TEX. CIV. PRAC. & REM. CODE § 127.005(b).  The extent of Defendants' coverage obligations thus determines the extent of Basic's duty to indemnify.

Defendant insurers relied on the Anti-Indemnity Act in a different context, as an alternative ground for affirmance in this coverage dispute.  Although, as just noted, that statute does provide a defense to an indemnity suit, we have previously held that it does not limit insurance coverage obligations that are separate and independent from indemnity obligations.  *See Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255, 258 (5th Cir. 1998) ("There is no justification for an argument that Texas courts would engraft a limit on coverage . . . as if the suit were only to enforce the indemnity itself.").  *Deepwater*

motions for summary judgment.  Defendants argued that Endeavor is owed only $5 million in coverage based on the insurance requirement in the MSA. The district court ruled in favor of Defendants, holding that the insurance policies incorporate the terms of the MSA, and therefore that the insurance available to Endeavor is limited to $5 million.  *Ironshore Specialty Ins. Co. v. Aspen Underwriting Ltd.*, 2014 WL 4186530, at *7–9 (W.D. Tex. Apr. 29, 2014). Ironshore appealed.

## II.

Our analysis, like the district court's, focuses on Defendants' argument that Basic's insurance policies limit Endeavor's coverage to the $5 million in insurance that Basic was contractually obligated to procure by the MSA's minimum insurance provision.  We review *de novo* the district court's grant of summary judgment on this question of contract interpretation.  *See Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Kasler*, 906 F.2d 196, 198 (5th Cir. 1990) ("The interpretation of an insurance contract . . . is a legal determination meriting *de novo* review.").  The parties agree that Texas law applies.  We therefore must apply that law "as interpreted by the state's highest court." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, LLC*, 620 F.3d 558, 564 (5th Cir. 2010).  When there is no case directly on point, we are required to make an "*Erie* guess"; that is, to "follow the rule we believe the Texas Supreme Court would adopt." *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir. 2003).

Because Basic was "obliged by a written 'Insured Contract' . . . to provide

---

*Horizon* confirms that view.  *See* 2015 WL 674744, at *12 ("We have long recognized that the contractual duties to indemnify and to maintain insurance may be separate and independent. Consequently, a statute invalidating an indemnification clause does not relieve a party of a separate duty to obtain insurance." (citations omitted)).

insurance" to Endeavor, there is no dispute that the company meets the definition of "Insured" under Basic's excess policies and is therefore covered by those policies. And there is no disagreement that under the MSA, Basic was only required to provide $5 million in insurance coverage to Endeavor. The dispute is limited to whether that provision in the MSA is incorporated into Basic's insurance policies as a limit on Endeavor's coverage. Ironshore contends that the policies do not limit Defendants' coverage obligations, either expressly or through the incorporation of the MSA's limitations. Defendants argue that their policies must be read "in conjunction" with the MSA, including its insurance provision, and therefore that Endeavor's coverage is limited to $5 million.

As is the case here, it is common for a service contract to require an oilfield company to obtain insurance to cover another company's liabilities. But our analysis of Endeavor's coverage "necessarily begins with the four corners of the policies," not the service contract. *See Deepwater Horizon*, 2015 WL 674744, at *5 (citing *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 664 (Tex. 2008)). Texas courts will not hesitate to award coverage beyond that contemplated by a service contract when the "terms of the . . . policy itself" do not impose the same limits as the service contract. *See, e.g.*, *ATOFINA*, 256 S.W.3d at 664. Thus, if nothing within the four corners of Basic's policies limits Endeavor's coverage, it is irrelevant that the MSA only required Basic to purchase $5 million of insurance to cover its indemnity obligations.

However, as with other contracts, "insurance policies can incorporate limitations on coverage encompassed in extrinsic documents by reference to those documents." *Deepwater Horizon*, 2015 WL 674744, at *5. In order to "incorporate a restriction from another contract into an insurance policy," the policy must "clearly manifest[] an intent" to do so. *Id.* (citing *Urrutia v. Decker*,

No. 13-51027

992 S.W.2d 440, 442–43 (Tex. 1999)).  Endeavor's insurance policy provides an example: it explicitly limits coverage to "the minimum Limits of Insurance [Endeavor] agreed to procure in [a] written Insured Contract."  ROA 1917.  By incorporating some of the MSA's terms, Endeavor's policy thus makes it clear beyond dispute that Basic was covered only up to $5 million, not up to the policy limits.

Although Basic's policies do not contain similar language, Defendants argue that they also incorporate the $5 million minimum obligation as a limit on Endeavor's coverage.  This, they argue, is because the insurance policy makes Endeavor an insured only by virtue of the existence of its obligations under the MSA.  The policies state:

> The word "Insured", wherever used in this Policy, shall mean . . .
>
> (c)    any person or entity to whom [Basic] is obliged by a written "Insured Contract" entered into before any relevant "Occurrence" and/or "Claim" to provide insurance such as is afforded by this Policy . . .

We must decide if this reference is sufficient to limit Defendants' obligations to the $5 million Basic was "obliged" to provide.

We initially had doubts that the "Insured Contract" clause alone incorporates the $5 million insurance obligation as a limit on Endeavor's coverage.  A mere reference to an outside contract for the purpose of defining a term in an insurance policy is not necessarily sufficient to incorporate that contract's terms.  *See Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) ("Plainly referring to a document [in order to incorporate it by reference] requires more than merely mentioning the document.  The language in the signed document must show the parties intended for the other document to become part of the agreement." (internal citation omitted)).  And the contrast with the Endeavor policy's unambiguous incorporation of insurance limits in the MSA is stark.

No. 13-51027

Our analysis on this state law question, however, must be guided by a recent decision of the Supreme Court of Texas. That case, *In re Deepwater Horizon*, involved a coverage dispute arising out of BP's 2010 offshore oil spill. BP, the oil field developer, contracted with Transocean, an owner of a drilling rig in the Gulf of Mexico. 2015 WL 674744, at *1. The parties' Drilling Contract called for Transocean to indemnify BP for above-surface pollution; BP was to indemnify Transocean for all other pollution risk. *Id.* at *2. The Drilling Contract also required Transocean to name BP as an additional insured in its insurance policies, "except Workers' Compensation for liabilities assumed by [Transocean] under the terms of [the Drilling] Contract." *Id.* at *4. BP sought coverage under that policy after the rig caught fire, submersed into the ocean, killed a number of crew members, and discharged millions of gallons of oil. *Id.* at *3.

As in this case, the parties disputed whether the terms of the contract between the oilfield companies limited the coverage owed under the insurance policies. Transocean argued that BP was not entitled to coverage for below-surface pollution claims because its coverage was limited to liabilities assumed by Transocean under the Drilling Contract. *Id.* at *6. BP argued that "the existence and extent of coverage [had] to be ascertained exclusively from the four corners of the Transocean insurance policies," which did not themselves limit the extent of coverage to above-surface pollution. *Id.* at *4.

The case came to our court, and we initially ruled that the policies did "not impose any relevant limitation upon the extent to which BP is an additional insured." *In re Deepwater Horizon*, 710 F.3d 338, 350 (5th Cir. 2013). After issuing that opinion, however, we withdrew it and certified the key questions to the Supreme Court of Texas. *In re Deepwater Horizon*, 728 F.3d 491, 493 (5th Cir. 2013).

That court found that Transocean's policies did incorporate limitations

8

from the Drilling Contract. In doing so, it relied on two provisions of the insurance policies. One of those provisions is almost identical to the "Insured Contract" language that Defendants in this case argue incorporates the MSA's limitations:

> Only the following are included in the definition of the "Insured" under this Policy:
>
> . . .
>
>   (c) any person or entity to whom the "Insured" is obliged by any oral or written "Insured Contract" . . . to provide insurance such as is afforded by this Policy;

*Deepwater Horizon*, 2015 WL 674744, at *14 (quoted by Johnson, J., dissenting) (alterations in original). The other, however, has no analogue in Basic's policies:

> Underwriters agree where required by written contract, bid or work order, additional insureds are automatically included hereunder, and/or waiver(s) of subrogation are provided as may be required by contract.

*Id.* The court reasoned as follows:

> BP is not named in any of the insurance policies nor is there any claim or evidence that it is expressly included as an additional insured in an endorsement or certificate of insurance; thus, if the coverage inquiry were constrained to the language in the insurance policy, BP would have no coverage at all. But that is not the case. Instead, the policies confer coverage by reference to the Drilling Contract in which (1) Transocean assumed some liability for pollution that might otherwise be imposed on BP (making that contract an "Insured Contract") and (2) Transocean is "obliged" to procure insurance coverage for BP as an additional insured (making BP an "Insured"). Moreover, additional insureds are automatically included under the policy only "where required by written contract, bid or work order." The language in the insurance policies providing additional-insured coverage "where required" and as "obliged" requires us to consult the Drilling Contract's additional-insured clause to determine whether the stated conditions exist.

*Id.* at *9 (majority opinion). The court then determined:

> The Drilling Contract required Transocean to name BP as an additional insured only for the liability Transocean assumed under the contract. Accordingly, Transocean had separate duties to indemnify and insure BP for certain risk, but the scope of that risk for either indemnity or insurance purposes extends only to above-surface pollution.

*Id.* at *12. It thus found that the BP was an additional insured "only to the extent of the liability Transocean assumed for above-surface pollution," and denied coverage. *Id.* at *13.

As mentioned above, the "Insured Contract" provision in Basic's policies is essentially the same as the corresponding provision in Transocean's policies. That does not resolve the question, however, because it is not clear what effect the *Deepwater Horizon* court gave to the "Insured Contract" provision alone. The court also relied on another provision that is not present in Basic's policies, adding additional insureds "where required by written contract." We must decide, therefore, whether both the "Insured Contract" and "where required" provisions were necessary to *Deepwater Horizon*'s result, or whether each provision standing alone was an independent basis for the decision.

Our best reading of *Deepwater Horizon* is the latter. The dissent in that case put forward the view that the "Insured Contract" provision merely required reference to the Drilling Contract in order to determine whether BP was an Insured, but did not limit the scope of BP's coverage "to the scope of the obligation assumed by the 'Insured' in a written contract or agreement." *Id.* at *14 (Johnson, J., dissenting). The majority apparently rejected this view, characterizing the provision as requiring "additional-insured coverage . . . *as* 'obliged.'" *Id.* at *9 (majority opinion) (emphasis added). And the court appeared to treat the "where required" and "Insured Contract" provisions as

functionally identical when it stated that "[t]he language in the insurance policies providing additional-insured coverage 'where required' and as 'obliged' requires us to consult the Drilling Contract's additional-insured clause to determine whether the stated conditions exist." *Id.* at \*9. Finally, the court's use of the word "moreover" when describing the effect of the "where required" provision suggests that the provision was an alternative ground for its holding. *Cf. Wetzel v. Lambert*, 132 S. Ct. 1195, 1198 & n.\* (2012) (per curiam) (holding that the court of appeals erred in granting habeas corpus when it only addressed one of the state court's alternative grounds for rejecting a *Brady* claim, noting that the ground it addressed was introduced by the state court with the word "moreover," "confirming that it was an alternative basis for its decision").

Our *Erie* guess, therefore, is that the "Insured Contract" provision was a sufficient ground in *Deepwater Horizon* to incorporate the Drilling Contract's limitation on coverage for above-surface pollution. The nearly identical language in Basic's policies thus compels the same result. Because Basic was only "obliged" to procure $5 million in insurance, we AFFIRM the district court's grant of summary judgment in favor of Defendants.